[No. 23515. Department Two. March 9, 1932.]

PAULINE CARTWRIGHT, *by her Guardian ad Litem, C. E. Cartwright, Appellant,* v. J. A. BOYCE *et al., Respondents.*[1]

*Colvin & Rhodes,* for appellant.

*Poe, Falknor, Falknor & Emory,* for respondents Soderquist.

*Ralph S. Pierce* and *Kenneth G. Smiles,* for respondents Boyce.

MILLARD, J.—By her guardian ad litem, the plaintiff brought this action to recover for personal injuries resulting from the collision of defendants' automobiles, in one of which the plaintiff was riding as a guest. This appeal is from the judgment of nonsuit entered at the close of plaintiff's case.

[1]Reported in 8 P. (2d) 968.

Unless there is evidence or reasonable inference therefrom which would have sustained a verdict in favor of the appellant, the judgment should be affirmed. *Jordan v. Spokane, Portland & Seattle R. Co.*, 109 Wash. 476, 186 Pac. 875.

This is not a case of a collision resulting from the operation of an automobile on the wrong side of the road. The facts, which are as follows, clearly disclose that the Soderquists were operating their automobile on their own right-hand side of the road; that the Boyce automobile, while attempting to pass to the left (with a clearance of twelve to fourteen feet in width) of the Soderquist automobile, skidded and collided with the Soderquist car.

The accident occurred about one-thirty p. m., September 1, 1930, on a straightaway four blocks long of a well improved gravel highway (Lake Sammamish road) twenty-four to twenty-eight feet wide. Appellant was a guest in the car of respondents Boyce. No cars other than the respondents' two automobiles, which were traveling at the rate of twenty-five to thirty miles an hour, were within the range of vision of the parties to the accident. The day was clear, and there was nothing to obstruct the vision of the operators of the automobiles. Both automobiles were traveling in a northerly direction.

The driver of the Boyce automobile, which was to the rear of the Soderquist car, traveled a distance of four miles on this road prior to overtaking the other car. The driver testified she could see the Soderquist automobile for four blocks before she overtook it. Respondents Soderquist were on their own right-hand side of the highway, the left-hand side of their automobile being "about the center of the road," leaving a space to the left of the center of the highway of twelve to fourteen feet. On the highway at that time, appel-

lant testified, was loose gravel on which the Boyce car traveled for four miles before overtaking the Soderquist car.

How close the Boyce automobile was to the Soderquist automobile when the horn was blown apprising the latter that the former desired to pass, is not disclosed. The driver testified that, when she was to the rear of the Soderquist car a distance of probably the width of the trial court room, she gave two or three blasts of the horn to warn the car ahead that she desired to pass, but that "he seemed to stay just exactly where he was." Deeming the space (twelve to fourteen feet) to the left of the Soderquist car of sufficient width to permit her to pass in safety, she "continued to go ahead. . . . The road was wide enough for me to get by, so I started to pass him."

As the Boyce automobile started to pass to the left of the other automobile, the former skidded in the loose gravel, the right front fender of the Boyce automobile hitting the left rear fender of the Soderquist automobile. The Boyce car landed on the left-hand side of the road against the bank and turned over. The driver of the Boyce car, called as a witness on behalf of the appellant, testified:

"Q. How much distance did you have from the left-hand side of Soderquist's car to the left-hand edge of the road to get through there? A. I had sufficient room to pass if the road had been a solid road. Q. In other words, you had plenty of room to safely pass if it had not been for this loose gravel? A. Yes, sir. Q. Now you testified this morning, Miss Boyce, that as you came up there and started to pass your right front fender hit his left rear fender? A. After I skidded. Q. I didn't quite understand that this morning. Is that your testimony now? A. Yes, when I started to pass him when I got out to the left side of the road I skidded and my front right fender hit his left rear fender. Q. Was that after you started to skid? A. Yes,

sir. Q. What made you skid; do you know? A. The loose gravel. Q. Well, you did not turn your car, though, did you? A. I turned it slightly as anyone else would to pass a car. Q. And then when you got up to where his car was you suddenly started to skid? A. Yes, that must have been it. Q. And the right front fender of your car skidded over to the left rear fender of his? A. Yes. Q. What did that do to your car? A. It swerved it out and it went into the bank. Q. You went over on the left-hand side of the road again, didn't you? A. Yes. Q. And then you skidded back and hit his car the second time, didn't you? A. I don't remember. Q. You are sure of that? A. No. I am not. . . . Q. Where were you on the left-hand side of the picture, that is at the time the accident occurred, toward the bank? A. Yes, sir. Q. And the other car was on the side of the road next to the fence or bulkhead? A. Uh huh. Q. After you had sounded your horn was there any change in the position with reference to the center of the highway of the Soderquist car? A. Well, I can't remember distinctly whether he moved over slightly or not at all. I know he did not move over a great deal if he did at all. Q. As I understood you to say, however, in your judgment there was still room enough to get by? A. Oh, yes, in my estimation there was plenty of room to get by. . . . Q. As I understand, these marks that you have placed with ink here on Exhibit 'A' indicate as near as you can recall the position of the right and left wheels of the Soderquist car? A. Yes. Q. Now as near as you can recall, while the mark on this picture indicates you might get a different view of it, it indicates it is just about the center of the road, doesn't it? A. I think it is slightly to the right of the center.''

Another of appellant's witnesses testified as follows:

''Q. Isn't it a fact that Mr. Soderquist's car was over here on these tracks? A. Mr. Soderquist's car was nearer the middle of the road than it was the right side. Q. Let me see if I understand you. You say that Mr. Soderquist's car was nearer the middle of the

road than it was the right-hand side of the road? A. Yes. Q. How many feet to the right of the center of the road was the left-hand side of his car? A. I don't know. Q. Well, give the jury your estimate of that? A. What is that question again? Q. How many feet from the center of the road—you see the center is over here—was the left-hand side of his car? A. I could not say. Q. Three or four feet? A. Possibly. I don't know though. Q. But in any event all of his car was over on its own side of the road? A. I am not sure. Q. Do you think those marks [the marks placed on Plaintiff's Exhibit 'A' by Virginia Boyce] approximately represent where the Soderquist car was when you started? A. Yes. Q. You had plenty of room to get by, didn't you? A. Yes. Q. In other words, if there had not been this skidding on this loose gravel there would not have been any trouble at all, would there? A. No. Q. And there was no traffic coming the other way? A. No traffic. Q. You ran into the left rear fender of the Soderquist car? A. Yes. Q. Was that before or after you skidded? A. We skidded and hit first and then we skidded some more. Q. You hit him again didn't you? A. Not that I remember. Q. Are you sure about that? A. I don't remember hitting him twice; I only remember hitting him once. Q. Then you skidded around and your car was headed in the opposite direction and you went over there in the ditch on the left-hand side; is that right? A. Yes. Q. Did you come in contact with his car first or skid first? A. We skidded first.''

The automobile of respondents was operated on a well improved gravel road at a normal rate of speed. There was sufficient space—twelve to fourteen feet—to the left of the Soderquist automobile to permit the Boyce car to pass in safety the Soderquist car. There was no traffic approaching. Miss Boyce gave a signal of her intention to pass the other car. Her automobile struck loose gravel and was thereby caused to skid. While skidding, the automobile collided with the automobile it attempted to pass. There is no evi-

dence, other than that of skidding, of negligence on the part of Miss Boyce. There is no evidence of excessive speed by the Boyce car. Our examination of the record fails to disclose evidence of defective equipment, or that there was lack of care on the part of the driver of the Boyce automobile. Miss Boyce was not violating any law of the road when she attempted to pass the car in front. While so proceeding, her car skidded and collided with the other car.

Unless there is evidence of negligent acts in addition to the evidence of mere skidding, and we find none, there is no question for the jury.

"The mere skidding of an automobile is not an occurrence of such uncommon or unusual character that alone and unexplained it can be said to furnish evidence of negligence in the operation of a car. [Citing cases.] . . .

"Some contention is made that the contrary view has been expressed in *Norris v. Hadfield,* 124 Wash. 198, 213 Pac. 934, 216 Pac. 846; but a careful examination of this case will show that the court found, as a matter of fact, that the automobile driver was negligent in the operation of his car, driving the same at an excessive rate of speed. In the instant case, the jury have found as a matter of fact that there was no negligence on the part of the driver of the car, either at or immediately prior to the accident, unless negligence can be inferred as a matter of law wholly and alone from the fact that the car skidded. On the authority of the cases and text writers cited above, we cannot so hold. Rather do we think that it is a fact to be taken into consideration by the jury, along with all other facts in the case, in determining whether there was negligence in the operation of the automobile." *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251.

See, also, *Barrett v. Caddo, etc., Co.,* 165 La. 1075, 116 South. 563, 58 A. L. R. 261; *Linden v. Miller,* 172 Wis. 20, 117 N. W. 909, 12 A. L. R. 665.

The authorities uniformly hold that the mere skidding, alone and unexplained, does not constitute proof of negligence; that if, as in the case at bar,

" . . . skidding of a machine is relied upon for a recovery by one injured thereby, it must appear that the operator was negligent in operating the machine, or did or omitted to do something which a prudent operator would have done, or that the defendant or his agents were negligent in some other manner." Huddy Ency. of Automobile Law (9th ed.), vol. 3-4, p. 120, § 68.

██ Nor is there evidence, or reasonable inference from evidence, that the driver of the Soderquist automobile was guilty of negligence.

Counsel for appellant contend that the violation by the Soderquists of Rem. 1927 Sup., § 6362-41, subds. 3 and 12, reading as follows, constituted concurring negligence and was a proximate cause of the accident:

"(3) The overtaking vehicle shall maintain its speed until clear of the vehicle or animal overtaken and the vehicle or animal being overtaken shall turn to the right and give one-half of the road, and shall not increase its speed while being passed.

. . . . . . . . . . . . .

"(12) It shall be the duty of any person in charge of any vehicle or animal moving along and upon any public highway to keep such vehicle or animal as closely as practicable to the right-hand boundary of such highway to allow more swiftly moving vehicles reasonably free passage to the left."

It is argued:

"That Soderquist was traveling near the center of the road and that he could have traveled equally as well over on the right-hand side of the road which would have placed his car at least five or six feet further to the right. He was overtaken by the Boyce car. Testimony shows that Virginia Boyce sounded her horn several times, but that Soderquist did not yield the road to permit the Boyce car to pass but continued

in the center of the road. This was negligence on the part of the defendants Soderquist and the question of his negligence should have been submitted to the jury."

There is no testimony that the Soderquist car did not keep on the side of the highway that was to him the right of the center of the highway. No part of that car was at any time to the left of the center of the highway. At least one-half of the road was yielded to the Boyce car. The speed of the Soderquist car was not increased while it was being passed. In fact, there was a literal compliance with the statutory requirement (Rem. 1927 Sup., § 6362-41, subd. 3) to give the overtaking vehicle one-half of the road and "not increase its speed while being passed." Subdivision 12 of the same section of the statute requires vehicles to keep as closely as practicable to the right-hand boundary of the highway "to allow more swiftly moving vehicles reasonably free passage to the left."

The two subdivisions must be construed together. If given a reasonable and workable construction, they mean no more than that, in all events, to the overtaking vehicle must be yielded one-half of the road (the Soderquist car so yielded); that the overtaken car shall not increase its speed while being passed (the Soderquist car conformed to this requirement); and that, if one-half of the road is insufficient to allow the overtaking vehicle "reasonably free passage to the left," then the overtaken vehicle must get as far over to the right as practicable to afford the overtaking car "reasonably free passage to the left."

To the Boyce car was given by the overtaken car twelve to fourteen feet to the left of the center of the highway on a four block straightaway with no traffic other than the two cars of respondents on the high-

way. There is no testimony that "reasonably free passage to the left" was not accorded the overtaking car as the statute requires.

It is patent that, if the driver of the Soderquist automobile was negligent, as appellant contends, in not driving along the extreme right-hand edge of the highway, nevertheless the operation of his car one foot or four feet to the left of the center of the highway was not a proximate cause of the accident. The Boyce car had sufficient space in which to pass, and would have in safety passed, the Soderquist car if the Boyce car had not skidded on the loose gravel. The skidding threw the Boyce car against the Soderquist car, and it continued to skid until it turned over on its side on the left-hand side of the road.

At the rate of speed (twenty-five to thirty miles an hour) at which the Boyce car was traveling when the horn was sounded to warn the overtaken car of the desire of Miss Boyce to pass, if she was approximately fifty feet from the overtaken car, the Soderquist driver had only a few seconds within which to get his car farther to the right of the center of the highway. One-half of the road would be twelve to fourteen feet. If the Soderquist car had driven to within three feet left of the guard rail on the extreme right edge of the highway, and appellant does not contend that Soderquist should have driven any nearer to the guard rail, the Soderquist car would have been within two or three feet of the point where it was when struck. It would have been sheer conjecture on the part of the jury to decide whether or not, after the Boyce car commenced its skidding, the accident would not have happened if the Soderquist car had been two to three feet further to the right of the center of the highway. The wreck was caused by the skidding of the Boyce automobile.

There is no evidence, nor is there any evidence from which it may be reasonably inferred, that Soderquist's position on the road was the proximate cause of the accident.

"It was incumbent upon the appellant, in order to recover against the respondent, to show that its driver was guilty of negligence. This she must show by substantial evidence—a scintilla of evidence will not do—and, in our opinion, the evidence here is not of that substantial character on which a jury is permitted to found a verdict." *Dunsmoor v. North Coast Transp. Co.*, 154 Wash. 229, 281 Pac. 995.

We have considered all of the authorities cited. They are either distinguishable on the facts from the case at bar or are not out of harmony with the views herein expressed.

The judgment is affirmed.

Tolman, C. J., Main, Holcomb, and Beals, JJ., concur.