[No. 23673. Department Two. February 1, 1933.]

C. W. HAINES *et al., Respondents,* v. R. V. PINNEY
*et al., Appellants.*[1]

[1]Reported in 18 P. (2d) 496.

*Karr & Gregory, J. K. Forrest, Reynolds, Ballinger, Hutson & Boldt,* and *Robert E. Capers,* for appellants.

*F. W. Loomis,* for respondents.

MAIN, J.—This action was brought to recover damages for personal injuries. The trial was to the court and a jury. At the conclusion of the evidence, the defendant moved for a directed verdict, which motion was overruled. The jury found in favor of the plaintiffs in the sum of ten thousand dollars. Motion for a new trial being made and overruled, judgment was entered upon the verdict, from which the defendants appeal.

The facts are these: The appellant Remington Rand Business Service, Inc., is a corporation with its principal place of business in this state in the city of Seattle, and the appellant R. V. Pinney is one of its employes. The respondents, C. W. Haines and Nora Haines, are husband and wife, and are the owners of a Model T Ford coupe.

The accident which caused the litigation happened December 5, 1930, at about 2:30 o'clock p. m., on what is known. as Crooked hill, on the Wynooche road, in Grays Harbor county. Upon this road, there are many curves or turns, and it has a grade of five or six per cent. The roadway is gravel, and approximately eighteen feet wide. At the time of the accident, the road was wet, but no rain was falling at the time. Over the road, there was a thin coating of loose gravel.

The respondents were proceeding up the hill in their Ford coupe, which was driven by Mr. Haines, and were on the outside of the roadway. Mr. Pinney was coming down the hill, driving a Chrysler sedan, and was on the inside or hillside of the road. The respondents were proceeding in low gear at about fifteen miles per hour. When they rounded a sharp

curve or turn, Mr. Pinney was about 120 feet distant coming towards them in the center, or partially on the left-hand side, of the road. When he reached a point about forty feet distant, the Chrysler began to skid. Thereupon, Mr. Haines pulled the Ford to the right of the roadway as far as he could, and stopped. The Chrysler continued to skid, as the testimony shows, for a distance of approximately forty feet, with the result that the left rear of that car collided with the left front of the Ford coupe, and Mrs. Haines sustained a broken kneecap. Other facts will be stated in connection with the consideration of questions to which they may be particularly germane.

As to the manner of the happening of the accident, the evidence is in direct dispute, Mr. Pinney testifying to an entirely different state of facts. It is unnecessary to set out his version as to how the accident happened, because we are here concerned only with the question of whether the evidence of the respondents made a question for the jury. In the complaint, there are a number of charges of negligence, one of which was that Mr. Pinney approached the curve where the accident happened with his car out of control.

It is first contended that the evidence of the respondents does not make a question for the jury, and that appellants' motion for a directed verdict should have been sustained. Rem. Rev. Stat., § 6362-41, subd. 7, provides:

"It shall be the duty of every person operating or driving any motor or other vehicle, . . . along or over any public highway when approaching any curve of such highway where for any reason a clear view for a distance of three hundred feet cannot be had, to hold such vehicle under control and to give signals with frequent blasts or strokes of a horn or other signaling device, and to keep to the extreme inside of

all curves to the right and to the extreme outside of all curves to the left.''

It will be noticed that, by this statute, the operator or driver of a motor vehicle, as he approaches a curve, is required to keep such vehicle under control. There can be no question that, if the evidence of the respondents correctly presents the situation, the Chrysler, as it came down the hill, was not under control, within the contemplation of the statute. The fact that it was skidding at the time of the collision does not relieve the appellants from liability, in view of the fact that the Chrysler, at the time it struck the Ford, was on its left-hand side of the road and the Ford was upon its right-hand side.

While skidding, in itself, is not ordinarily evidence of negligence, where a car skids upon its left-hand side of the road and collides with another automobile, the burden is upon the driver upon the wrong side of the highway to justify the violation of the law of the road. *Cartwright v. Boyce,* 167 Wash. 175, 8 P. (2d) 968; *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365. Where the driver of an automobile approaches a curve at such a rate of speed that he does not have the car under control, he is guilty of negligence. *Linville Bros. v. Bliesner,* 133 Wash. 677, 234 Pac. 1019. The question of the negligence of the driver of the Chrysler was for the jury.

It is next contended that the respondents were guilty of contributory negligence, as a matter of law. This contention appears to be based upon the assumption that Mr. Haines did not sound the horn of the Ford until he had passed around the curve or bend. While we think that the testimony of the respondents, when read in its entirety, does not justify this assumption, nevertheless, if such were the fact, the

question of whether such contributory negligence was the proximate cause of the accident would still be one for the jury.

It is next contended that the court erred in giving instruction No. 6. In this instruction, the jury were informed that it was not a sufficient compliance with the statute requiring the giving of a signal to substitute some other or different signal than that provided for in the statute, "but it is for the jury to determine whether the continuous blast of the horn was a sufficient compliance with the statute." In instruction No. 17, the statute above set out was quoted, and the jury were told that the violation of the statute was negligence, and if such negligence materially contributed to the cause of the accident, it would bar a recovery by the respondents, even though the driver of the Chrysler car was guilty of negligence which was the proximate cause of the accident. The statute provides that, when the operator or driver of a motor vehicle approaches a curve in the highway, he shall give signals "with frequent blasts or strokes of a horn or other signaling device." The appellants say that the evidence shows that the driver of the Ford did not repeatedly sound the horn thereof as he approached the curve, but that he gave one continuous blast of the horn during the time that he was rounding the turn.

The quoted portion of instruction No. 6, in which the court submitted to the jury the question of whether the continuous blast of the horn was a sufficient compliance with the statute, was erroneous. If the facts were not in dispute upon that question, it was one of law. On the other hand, if the facts were in dispute, then the court should have informed the jury what would constitute a compliance with the statute, and left it to them to find the facts.

Even though that portion of the instruction was not correct, it does not follow that the judgment should be reversed for this reason. We are plainly of the view that there was no prejudicial error in the instruction, when read in connection with instruction No. 17 and the other instructions in the case. The court did not give an instruction which stated, as a matter of law, that the continuous blast of the horn was a compliance with the statute, and the appellants did not request an instruction that such continuous blast was not a compliance therewith. The question therefore, if it is a question, of whether the continuous blast satisfied the requirements of the statute, is not before us.

It is next contended that the court erred in refusing the appellants' requested instruction No. 2, which was on the subject of skidding. Instruction No. 9 correctly informed the jury as to what the law was with reference to skidding. The appellants say that the requested instruction was broader than the instruction given, and explained the law more clearly. The requested instruction was properly refused, not only because the matter of skidding was sufficiently covered in the instruction given, but because that instruction was, in part, at least, argumentative.

There are a number of other assignments of error with reference to the instructions given, as well as the refusal of the court to give certain requests, all of which have been considered, and we find no prejudicial error in this regard. The instructions given fully and accurately, except in the one particular above mentioned, cover the issues and the testimony in the case, and this was all that was required.

Finally, it is contended that the verdict of ten thousand dollars was excessive. The evidence shows that there was approximately one thousand dollars of special damages, which would leave the sum of nine

thousand dollars general damages. Mrs. Haines, at the time of the accident, was thirty-seven years old, in good health, and had been an active and industrious woman. Prior to the accident, she had been able to earn the sum of $2.50 per day in a veneer plant, and at other times five or six dollars per day as a cook. She and her husband lived on a ranch, and when not otherwise employed, she had been able, in addition to the household work, as she testified, to supply the family with eggs, vegetables and chickens, and, besides what they used themselves, to realize an estimated profit therefrom of thirty-five to forty dollars per month.

Subsequent to the accident, Mrs. Haines underwent two operations on the knee, and at each of these times was confined to her bed for six or seven weeks. She was left with about fifty per cent total and permanent disability in the left leg. In addition to this, there was evidence as to the pain and suffering which she had endured in the past and which she would endure in the future. The surgeon who performed the second operation, in part, testified:

"I do not expect her to be perfectly well; she won't be perfectly well. It will be about eighteen months or two years before she will become what we call fixed or stationary. She will always have about 50% disability in that leg. I should say that the maximum flexion she can get will be 35° to 40°. She will have trouble going up or down stairs and will stumble more easily in working on uneven ground. The wobbling of the knee will not be as bad as it was in time. She will be able to get around a little better in the future but not to carry on her work with the freedom that she could nor work in a logging camp or factory. Her knee will give much more readily than a normal knee—which would let her fall anywhere. The pain ought to disappear within a few months; but there is always more or less joint injury in these things, which means arthritis, which means traumatic inflammation of the joint, and those may go on over a long period of time. It might

bother her all her life. In the future she will get a little more motion of the knee joint."

Before we would be justified in requiring an election to accept a smaller judgment, or, in the alternative, direct a new trial, it would be necessary for us to find that the jury, in fixing the amount of the verdict, was actuated by passion or prejudice. There is nothing in this case to indicate passion or prejudice, unless it is found in the amount of the verdict. We cannot say that nine thousand dollars general damages, in view of the facts as the jury had a right to find them, is such an amount as to indicate passion or prejudice.

The judgment will be affirmed.

BEALS, C. J., STEINERT, and TOLMAN, JJ., concur.

