[No. 28064.   *En Banc.*   December 3, 1940.]

CHARLES C. HUGHES, *Respondent,* v. GALE WALLACE, *Appellant.*[1]

[1]Reported in 107 P. (2d) 910.

*Newton & Newton* and *Wm. A. Johnson,* for appellant.

*Ralph B. Potts,* for respondent.

JEFFERS, J.—This action was brought by Charles C. Hughes to recover from Gale Wallace damages claimed to have been sustained by plaintiff personally, and to his truck, as the result of a collision between the truck driven by plaintiff and one driven by defendant. The accident occurred January 25, 1939, on the Stevens pass highway, about one and one-half miles northwest of Monroe, at an intersection of what will be referred to as the Reformatory road with the Stevens pass highway.

The complaint alleges that defendant was negligent: (1) In failing to stop at a main and arterial highway; (2) in failing to surrender the right of way to plaintiff's truck, although such truck was proceeding on a main and traveled highway, and also on the right of defendant; (3) in failing to sound a horn when a collision was imminent; (4) in failing to have or use brakes sufficient to stop within a reasonable distance, or at all; (5) in failing to keep a lookout ahead, or at all; (6) in driving at a reckless, dangerous, and unlawful rate of speed, considering the intersection of a main highway with a county side road, the condition of the pavement, and the use of the highway by others.

Defendant answered the complaint, denying the allegations of negligence and alleging affirmatively that plaintiff was guilty of contributory negligence, in that plaintiff was operating his truck at a rate of speed greater than was reasonable and proper, under the conditions existing at the point of operation; and that plaintiff failed to keep a proper lookout for other vehicles and to keep his truck under proper control. Defendant also, by way of cross-complaint, asked for damages for claimed injury to his truck in the sum of forty-five dollars. The allegations of the cross-complaint and the affirmative allegations of the answer were denied by plaintiff's reply.

The cause came on for hearing before the court and jury, and on January 26, 1940, the jury returned a verdict in favor of plaintiff for nine hundred dollars. Motion for new trial was made by defendant and denied, and on February 6, 1940, judgment was entered on the verdict, and this appeal by defendant followed.

Appellant makes thirteen assignments of error. Assignment No. 1 is based upon the denial of appellant's motion for mistrial because of a reference to insurance made by witness Leslie Johnson. Assignment No. 2 is based on the denial of appellant's motion to dismiss at the close of respondent's case. Assignments Nos. 3, 4, and 5 are based upon the giving of instructions Nos. 3, 6, and 7, respectively. Assignments Nos. 6, 7, 8, 9, 10, and 11 are based upon the refusal of the court to give requested instructions Nos. 2, 3, 5, 6, 7, and 8, respectively. Assignment No. 12 is based upon the court's denial of appellant's motion for new trial, and No. 13 upon the entry of judgment for respondent.

Appellant, for the purpose of argument, has grouped his assignments of error under three headings, as follows: (a) The question of the contributory negligence

was for the jury and not for the court; (b) the court should have ordered a mistrial because of the situation arising out of the insurance testimony; (c) the duty to stop before entering an arterial highway is subject to a qualification that all such duties are affected by the conditions at the time.

We shall discuss the questions in the order in which they are above set out.

Appellant states in his brief: "Unquestionably, the collision resulted from the skidding of appellant's truck. Everyone agreed that he did skid." The trial court, in instruction No. 6, told the jury that there was no evidence in the case which would legally justify a finding that respondent was guilty of contributory negligence, and that therefore there could be no recovery by appellant of any damage claimed to have been done to his truck. Appellant contends that there was sufficient evidence to require the trial court to submit to the jury the question of the contributory negligence of respondent.

From the undisputed testimony, it appears that Stevens pass highway is an arterial highway, and that there is a stop sign on the Reformatory road where it intersects the arterial; that, at the point of collision, the arterial had a sixteen foot concrete surface, with about three feet of black top on the north side of the concrete, and north of the black top, some six to ten feet of gravel.

Respondent testified that, on the day of the accident, between eight and nine o'clock in the morning, he was proceeding westward on the Stevens pass highway, driving a Ford truck loaded with two hundred boxes of apples, which he was hauling to Everett; that it had been sleeting and raining all night and was still raining slightly—"misting slightly;" that the pavement was icy and slippery, and he was driving about fifteen

to eighteen miles per hour; that his brother Paul Hughes was with him; that, about one and one-half miles west of Monroe, as they were approaching the point where the Reformatory road comes into the arterial, and when they were about three hundred feet from the intersection, respondent saw a truck coming down the Reformatory road toward the arterial; that respondent stated to his brother, "That fellow isn't going to be able to stop."

Respondent further testified that he thought appellant "was running 'round thirty-five miles an hour, possibly forty;" that, when he first saw appellant's truck, it was about two hundred yards from the intersection. Respondent testified:

"I seen he wasn't going to be able to stop and the icy condition of the road, I was afraid to put on my brakes hard, so I started to pull off the right side of the road; before I could come to a stop this truck approached the highway and put on his brakes just as he went to turn his wheels, and skidded completely across the highway and struck my car."

Respondent further testified that appellant did not slow down until just as he went to turn to come out on the highway, when he put on his brakes, locking all four wheels, and "he came sliding completely all across the highway;" that, when respondent's truck was struck, it was still moving about "seven, eight, nine miles an hour," and that the right wheels were about four feet over on the shoulder of the road, off the pavement; that, after the collision, both front and rear wheels on the right side of respondent's truck were off the pavement on the shoulder, and appellant's truck was practically all over the yellow line on respondent's side of the road.

It further appears from the testimony of respondent that, immediately after the accident, appellant stated, in the presence of respondent, his brother Paul Hughes,

and Mr. Hall, state highway patrol officer: "This accident is completely my fault."

Leslie Johnson, proprietor of the Ford garage at Monroe, testified as follows:

"Q. Did you hear Mr. Wallace say anything about how the accident happened? A. Well, he came in and talked to me. Q. By the way, who got there first, Mr. Wallace or Mr. Hughes? A. Mr. Wallace, I think came up first. Q. And what did he say to you about how the accident happened? A. He just casually mentioned that there would be a man up here pretty quick that he bumped into down here. He says, 'and I'll see that it is taken care of,' he says. Q. Did he say anything about whose fault it was? A. Well, he talked as if it was his fault, yes. He says, 'I am to blame for it; I slid into him down there. It was very frosty and icy,' he says. 'I slid into him and if you fix him up, I'll see that it is taken care of.' "

Mr. Erickson, an employee in the Johnson garage, testified that he heard appellant make the above statement to Mr. Johnson.

Mr. Charles Hall, state highway patrol officer, testified that he had been called out that morning several times because of other accidents; that the highway was in a "bad icy condition;" that, when he reached the scene of this accident, the right side of the Hughes truck was off the road and headed in a westerly direction, and the Wallace truck was in the middle of the intersection, headed at about a ten degree angle toward the north edge of the road. Mr. Hall further testified that he questioned both Mr. Hughes and Mr. Wallace, and that Mr. Wallace told him he was coming down the Reformatory road in a northerly direction, saw the stop sign at the intersection, and attempted to stop, but due to the icy pavement, he was unsuccessful in doing so, and slid into the intersection, striking the Hughes truck; that Mr. Wallace indicated

he was willing to pay for the damage to the Hughes truck.

Paul Hughes' testimony was to the same effect as respondent's.

Appellant testified that he was driving an International truck, with a cattle rack on it, on the Reformatory road, and that he had been over the road earlier in the morning, going from his home to see some farmers about buying cattle; that he bought a calf and then started back over the same road; that he had not had occasion to use his brakes that morning; that, as he approached the intersection of the Reformatory road with the arterial, it was quite foggy. Appellant stated:

"I drove right up to the highway and stopped, and looked to see if any cars was coming. I was supposed to stop there. When I went to put on the brakes, I skidded, you know, just like it was glass, or something, right out in the middle of the road. At that time Mr. Hughes was coming by, and we collided."

When appellant was asked how fast he was driving as he approached the intersection, he answered:

"Well, I was probably going fifteen or twenty miles back, but when I got right up to the intersection I slowed up to—when I put on the brakes it was probably less than five miles an hour,—I just nearly stopped when I put on the brakes."

The witness further testified:

"I was planning on turning to the right and when I got right to the highway, right up to the edge, I put on the brakes to stop, and instead of stopping I slid right out to the highway. I seen I was starting to slide when I put on the brakes, so I turned, and I was out in the middle of the road. When I started to turn the back end started turning right around, and I was about at that angle (illustrating) when Mr. Hughes hit me."

The witness further testified there was nothing to call his attention to the fact that the road was in a dangerous icy condition at the intersection. On cross-examination, he testified that he did not see the Hughes truck until after they hit; that he put on his brakes about five or six feet from the intersection.

■ We are of the opinion that, under the facts of this case, the court properly decided as a matter of law that respondent was not guilty of contributory negligence. We are of the opinion the evidence conclusively shows that, because of the icy condition of the pavement, respondent could not have immediately stopped his loaded truck, and that, in pulling off to one side, he was doing all that he could under the circumstances. It is also conclusively shown that respondent was not only on his own side of the road at the time of the collision, but was about four feet off on the shoulder. It is difficult for us to see, under the testimony in this case, how the court could have done other than it did. While the factual situations in the cases of *Cartwright v. Boyce,* 167 Wash. 175, 8 P. (2d) 968, and *Cook v. Rafferty,* 200 Wash. 234, 93 P. (2d) 376, were not the same as those in the instant case, we think the principle therein announced supports our conclusion herein.

We are entirely in accord with the rules announced in the case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, cited and relied upon by appellant, but we are of the opinion that case is not controlling herein.

It follows from what has been stated herein that the court properly gave instruction No. 6, taking from the jury the question of contributory negligence, and also properly refused to give requested instructions Nos. 2 and 5, which dealt with the alleged contributory negligence of respondent.

■ We shall next take up the question of the in-

surance testimony. The reference to insurance was made by Leslie Johnson, garage man at Monroe, of whom mention has hereinbefore been made. Johnson was called as a witness for respondent, and on direct examination by counsel for respondent testified that appellant told him that he (Wallace) was to blame for the collision, and that if Johnson would fix up respondent, appellant would see that it was taken care of. On cross-examination by counsel for appellant, Johnson was interrogated in regard to some minor adjustments to respondent's truck, to the extent of $6.65, and the witness was asked whether or not that was what appellant said he would take care of. On redirect examination by respondent's counsel, Johnson was further interrogated relative to what appellant said, and answered:

"Q. But Mr. Wallace came in there first? A. Yes. Q. What did he tell you to do, just fix up the car as it was fixed, or how did he tell that to you? A. Well, he told me in this way: He said to go ahead and fix it up, and he says, 'I will see it is taken care of. I am covered by insurance,' he says."

Counsel for appellant immediately moved that the jury be instructed to wholly disregard any reference made by the witness to insurance, and the court immediately so instructed the jury. The trial court also by instruction No. 7 further instructed the jury to disregard any reference to insurance, as that had nothing to do with the merits of the case.

At the close of the testimony of witness Johnson, appellant moved for a mistrial, upon the ground that the record showed there had been a willful attempt on the part of counsel for respondent to bring into the case the question of insurance. The trial court denied the motion, and it is claimed the court erred in so doing.

In *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159, we stated:

"Counsel predicates error upon this incident, saying: " 'This court has held in many instances that any attempt on the part of counsel to bring before a jury the question of insurance in a case of this character is reversible error.'

"We do not understand that the court has ever gone so far. The extent of our holding is that if it be apparent that counsel deliberately sets about, although in an indirect way, to inform the jury that the loss, if any, will fall upon an insurance company instead of the defendant, his conduct will be held prejudicial. . . .

"'The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel."

The case of *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12, cited by appellant, adds nothing to what we have already stated. The case is not controlling, for the reason that the reference to insurance therein was made by counsel, and after the first mention of insurance had been made and the jury instructed to disregard it, counsel continued and by his further remarks aggravated the situation. Clearly, in the cited case, this court properly granted a new trial.

In the case at bar, the trial court, as shown by its statements in ruling on the motion, was of the opinion that counsel for respondent had not willfully attempted to inject into the record the matter of insurance. The court was further of the opinion the question asked Mr. Johnson did not require, for a complete answer, any mention of insurance. The court was also of the opinion that what counsel was trying to bring out was whether appellant said he would be responsible for just the minor repair of some six dollars, or the more complete job of repair, which it was asserted the truck required.

We are in accord with the ruling of the trial court. While we fully appreciate the delicate situation raised by any reference to insurance in this class of cases, after an examination of this record we are convinced that there was no deliberate attempt on the part of counsel for respondent to inject into this case the question of insurance, but that it came in accidentally.

■ The last question raised by appellant concerns the duty of appellant to stop before entering the arterial and the skidding of appellant's truck, and hereunder appellant contends the court erred in giving instruction No. 3, and in refusing to give requested instructions Nos. 6, 7, and 8.

Appellant admits that the collision resulted from the skidding of his truck. The testimony is undisputed that appellant's truck skidded over to the right side of the pavement and into the lane where respondent was driving, and where he had a lawful right to be.

By instruction No. 3, as given, the jury was first instructed that it was the duty of appellant to stop before entering the intersection, and that it was the duty of appellant to yield to respondent the unobstructed use of respondent's right-hand half of the highway, upon which respondent was traveling. The instruction continues:

"And if after considering all the evidence bearing thereon, your minds shall be more strongly inclined to the belief and final conclusion that defendant did thus fail to stop and did thus fail to yield, and that as a direct and proximate result thereof there was collision and plaintiff sustained injury to person or to property, or to both, then your verdict will be for plaintiff in such sum, if any, as your minds shall be most convinced was done to plaintiff; all this, unless your minds shall be more inclined to the final conclusion than otherwise that the skidding of the truck driven by defendant was due to icy condition of the pavement, of which defendant did not know, or of

which he in the exercise of ordinary care and prudence was not reasonably required to have known to be existing at the time and place of his approach and entry into this intersection."

It is contended that instruction No. 3 is confusing and did not clearly present to the jury a clear statement of the law. Appellant further contends that, under the rules announced in *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251; *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365; and *Wilson v. Congdon,* 179 Wash. 400, 37 P. (2d) 892, requested instructions Nos. 6, 7, and 8 were correct statements of the law to be applied in this case.

Requested instruction No. 6 states:

"You are further instructed that mere skidding of an automobile is not an occurrence of such uncommon or unusual character that alone and unexplained it can be said to furnish evidence of negligence in the operation of a car."

Requested instruction No. 7 is as follows:

"You are instructed that if you should determine from the evidence that the automobile in which the defendant was riding came suddenly and unexpectedly upon an icy pavement which caused said car to skid and thus created a position of peril and of sudden emergency, then I instruct you that the law does not hold defendant to responsibility in the same degree for sound judgment and proper action as under other circumstances. The fact that the driver had to act suddenly in an emergency and without opportunity for deliberation is a circumstance to be taken into consideration in determining what is ordinary care in that situation."

We stated in *Weaver v. Windust,* 195 Wash. 240, 80 P. (2d) 766:

"It is a general rule that mere skidding of an automobile is not an occurrence of such uncommon or unusual character that, alone and unexplained, it can be

said to furnish evidence of negligence in the operation of an automobile. *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251; *Cartwright v. Boyce,* 167 Wash. 175, 8 P. (2d) 968. Even though skidding in itself is not ordinarily evidence of negligence, where an automobile skids over onto its left-hand side of the road and collides with another automobile, the burden is upon the driver on the wrong side of the road to justify the violation of the law of the road and establish that he was free from fault. *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365; *Haines v. Pinney,* 171 Wash. 568, 18 P. (2d) 496; *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432."

We also stated in the late case of *Cook v. Rafferty,* 200 Wash. 234, 93 P. (2d) 376:

"While it is true that the mere skidding of a car is not necessarily evidence of negligence (*Wilson v. Congdon,* 179 Wash. 400, 37 P. (2d) 892), it is a circumstance which may be taken into consideration in connection with all of the facts and circumstances of the case in determining whether or not the driver of the car was guilty of negligence."

We are clearly of the opinion that, under the facts of this case, the court properly refused to give requested instructions Nos. 6 and 7, and was entirely justified in giving an instruction on skidding, in the language used in instruction No. 3.

It is true that, while on the witness stand, appellant stated that he had no reason to believe the highway was icy and slippery at the point of the collision; but when all of the testimony is considered, including the purported admission made by appellant, certainly the trial court was entirely justified in instructing the jury as it did in instruction No. 3, that whether or not appellant should be excused from failure to stop at the arterial and failure to yield to respondent one-half the highway, would depend upon whether or not the jury were convinced that the skidding of appellant's car

was caused by an icy condition of the pavement, of which appellant did not know, or of which appellant, in the exercise of ordinary care and prudence, was not reasonably required to know.

We are of the opinion the question of appellant's duty to stop at the arterial and the question of appellant's skidding are so clearly related that it was not improper to cover the whole situation in one instruction. We think the instruction correctly states the law applicable to the facts in this case.

■ Proposed instruction No. 7 refers to an emergency. It should be kept in mind that appellant testified he did not see respondent's truck until they hit. Considering the question of an emergency, then, from the standpoint of appellant, and assuming that he did not see respondent's truck until they hit, and assuming that he slowed down to five miles an hour before entering the intersection, it is difficult for us to see where there was any emergency.

We are of the opinion that the trial court properly refused to give requested instruction No. 8, for the reason that it does not cover any issue presented by the facts in this case.

An examination of this record convinces us that all the issues were fairly covered by the instructions herein set out and others given by the trial court. There is no question but that there was ample testimony in this case to sustain the verdict, by which the jury determined appellant was negligent.

Finding no error in this record, the judgment is affirmed.

ALL CONCUR.