[No. 28213. Department One. March 11, 1941.]

A. N. TUTEWILER et al., Respondents, v. GEORGE E. SHANNON et al., Appellants.[1]

[1]Reported in 111 P. (2d) 215.

24

The *Attorney General, John E. Belcher* and *Oliver Malm, Assistants,* for appellants.

*Snively & Bounds* and *Owen Clarke,* for respondents.

DRIVER, J.—This action for personal injuries and car damages grew out of a collision between two automobiles. A trial to the court without a jury resulted in findings and judgment for the plaintiffs, from which the defendants have appealed.

The collision occurred at about 1:30 p. m., on a midwinter day, at a point on the Snoqualmie pass highway approximately one-fourth of a mile east of the summit. The highway extends in a general easterly direction from the summit on a grade of one and a half to two per cent, and, at the time in question, was sixty feet wide between perpendicular snow banks, ten or twelve feet high, cut out by the action of snow plows. The entire surface was covered with packed-down snow, which was very icy and slippery. A light shower of rain and sleet was falling. Several hundred feet east of the place of collision, the highway narrowed

abruptly from four traffic lanes to two lanes. Beginning at that point and extending back up the highway toward the summit, there was a ridge of snow about eighteen inches high and two or three feet wide at the base, which had been pushed up by the scraper blade of a snow plow and had not yet been removed. This ridge ran parallel to the snow bank on the northerly side of the highway and, according to various estimates of the witnesses, was from eight to fifteen feet distant therefrom.

At the time of the accident, respondent A. N. Tutewiler was traveling from Seattle toward Yakima. He was driving a car which belonged to his son, respondent Walter Tutewiler, who did not accompany him on the trip. The other respondent, James Tutewiler, also a son of A. N. Tutewiler, was riding with him in the car.

Appellant George E. Shannon (who will hereafter be referred to as if he were the only appellant), a parole officer of the state training school for boys, was traveling westward toward Chehalis, driving a state-owned automobile, in which he had five boys. The collision occurred when the state car skidded across the highway to its southerly side (appellant's left hand side) and struck respondents' automobile, which was proceeding in the opposite direction and had at all times been well on its own proper side of the road.

The record presents the usual conflict in the testimony as to the rates of speed of the automobiles involved and the manner in which the accident occurred.

Appellant testified that he was driving at a speed of only twenty miles an hour and had his car well under control when he tried to cross over the ridge of snow on his right to enable a motor bus, which had been following him, to pass by; that his right front wheel crossed over the ridge, but he could not get the other wheels across, although he "put it in second gear" in his effort

to do so; and that, after traveling along the ridge for about fifty feet, his car suddenly "shot out across the yellow line" and struck respondents' automobile at an angle of forty-five degrees from the front.

Appellant's testimony was generally supported, with some discrepancies, which we shall not relate in detail, by two of the boys who were riding with him in the state car and also by the driver of the passenger bus. The driver, a disinterested witness, testified that he had approached the place of the accident with his bus "in third gear"; that it was equipped with a governor which would not permit it to go more than thirty-four miles an hour in that gear; and that he had gained upon the appellant's car, and estimated that it had been going about twenty-five miles an hour just before the collision.

Respondent A. N. Tutewiler testified, in effect, as follows: He had been driving along at twenty miles an hour, within about eight feet of the snow bank on his right, when he saw the other car approaching six hundred to seven hundred feet away. It had swerved across the middle of the highway to his (southerly) side, then back almost to the snow bank on the other (northerly) side; then it had kept "wiggling," and he thought it had passed him, but it skidded around and across the highway at a forty-five degree angle from the rear, and struck his car a little behind the left front wheel. He estimated that the state car had been traveling sixty miles an hour.

This respondent's version of the accident was substantially corroborated by the testimony of respondent James Tutewiler.

Appellant's assignments of error present only these two questions: (1) Was appellant guilty of any negligence which was a proximate cause of the accident? (2) Was there any contributory negligence on the

part of the driver of the Tutewiler car which precludes recovery by the respondents?

■   With reference to the first question, the parties seem to be in agreement as to the applicable law. The mere skidding of an automobile is not such an unusual or uncommon occurrence as to constitute evidence of negligence in the operation of the vehicle. *Osborne v. Charbneau,* 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251; *Cartwright v. Boyce,* 167 Wash. 175, 8 P. (2d) 968.

However, the driver of a car will be liable for the consequence of its skidding if such skidding is due to any negligent act or omission on his part; and, where a car skids across the center line to its left hand side of the highway and there collides with another vehicle, the burden is upon the driver on the wrong side of the road to show that he got there through no fault of his own. *Martin v. Bear,* 167 Wash. 327, 9 P. (2d) 365; *Haines v. Pinney,* 171 Wash. 568, 18 P. (2d) 496; *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432; *Weaver v. Windust,* 195 Wash. 240, 80 P. (2d) 766.

■   The question under consideration may, then, be further narrowed to this: Was the skidding of appellant's automobile caused by his own negligence? Appellant contends that it was not, as he lost control of the car because he tried to cross the snow ridge to let the bus pass by, a proper thing for him to do.

The testimony of appellant and his witnesses, in support of this contention, is rather vague and somewhat contradictory. Appellant, on direct examination, stated:

"A. Well, the furrow of snow blocked my getting into the other lane. Ordinarily, when they widen out to the other lane a car gets over on that other lane and permits the other cars to pass if they want to, *which the stage was apparently trying to do.* Q. You knew that the stage was behind you? A. Yes, sir." (Italics ours.)

One of the occupants of appellant's car also testified:

"A.  Well, we were starting—  We just came out of this narrow stretch and we started this car up, kept going, and there was a bus coming behind us and another car going up that way and there wasn't too much room there, and Mr. Shannon started to go over this ridge of snow and when he started to go over he started to slide and hit this fellow."

The bus driver, on direct examination, testified as follows regarding this same incident:

"A.  Well, there was nothing happening until he [appellant] struck this snow bank, this ridge of snow. Q.  Then what happened?  A.  He started across.  *I don't know whether he started to cross so I could get by him or not,* but I was right behind him and could have went by him if—  THE COURT:  Q.  You mean, he started to cross it to the right?  A.  Yes, . . ." (Italics ours.)

However, the same witness testified on cross-examination:

"Q.  Then at the time of the accident you say you were 300 yards back there?  A.  At the time of the accident?  Q.  Yes.  A.  No, sir.  Q.  How far back? A.  *I would say about 250 feet.*  Q.  Just preparing to pass the Shannon car?  A.  When he got into that trouble I slowed down."  (Italics ours.)

The appellant should not have felt obliged to drive across the ridge of snow to let a bus pass by when it was two hundred and fifty feet behind him.  The bus driver stated, by way of explanation, that he had slowed down when appellant got into difficulty, but that could not have widened the gap between the bus and appellant's car very much, because, according to other testimony of the bus driver, the car followed along the snow ridge a distance of only thirty feet or so before it shot abruptly across the road into collision with respondents' automobile.  No one testified that the bus driver,

by a blast of his horn or otherwise, ever indicated his intention or desire to pass the appellant's car.

On the other hand, respondent A. N. Tutewiler's account of the accident is supported by the testimony of another disinterested witness, a truck driver who came along within half an hour after the collision. From the car tracks on the surface of the highway, which, he said, were "very, very plain," this witness described the course which the appellant's car had taken as follows:

"A. A car crossed the road, I would say three quarters of the way across here, just where it started to widen, and you could see where it had sloughed along in here, this way. Then from this point on it straightened up and there was only straight tracks until it crossed about into the righthand lane. Here the blade had left a ridge of snow possibly a foot high, maybe eighteen inches high. This car had crossed this little snow ridge with its right front wheel, and when the left front wheel got about the center of it, it turned back the other direction, turning him almost completely around in the road and in a sort of a semi-circle. Q. Now, this course you have been drawing is the course of which car? A. The State car."

The appellant particularly complains of the trial court's finding that he was driving in excess of fifty miles an hour.

The evidence, we think, does preponderate against that specific finding, but the lower court also found that the appellant was driving at an excessive and dangerous rate of speed,

" . . . contrary to the rules of the road, and without keeping a proper look-out, and on pavement which was packed with ice and snow, at a time when visibility was poor because it was raining, . . ."

After consideration of the entire record, we are of the opinion that the lower court was warranted in

making these findings. Appellant was well acquainted with the Snoqualmie pass highway, and it would seem that he was also aware of its icy, slippery condition on the day of the accident, as he had put on tire chains before starting up over the summit. The ridge of snow which he blamed for the loss of control of his car was plainly visible, and, under the circumstances, he was not obliged to cross it. The trial court could have concluded that he was driving too fast under the conditions which then existed, even though his rate of speed may have been substantially less than fifty miles an hour.

As has often been said, a trial judge, having the witnesses personally before him, is in a much better position than this court to pass upon their credibility. The findings of the trial court, based upon conflicting testimony, will not be disturbed unless the evidence clearly preponderates against them. *Bohlke v. Wright,* 200 Wash. 374, 93 P. (2d) 321; *Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101 P. (2d) 316; *Evans v. Hartmann,* 5 Wn. (2d) 434, 105 P. (2d) 717.

With reference to the question of contributory negligence, appellant contends that respondent A. N. Tutewiler was at fault in failing to stop, or to turn farther to his right, when he saw, or, in the exercise of reasonable diligence, should have seen, that a collision was imminent. Neither driver at any time applied his brakes. (Both cars were equipped with chains.)

Respondent A. N. Tutewiler testified that he could not have safely applied his brakes on account of the slippery condition of the roadway, and that his car probably would have skidded out of control had he done so. His testimony was not disputed in that regard.

It is true, as appellant claims, that respondent driver could have driven farther to his right (he testified that his car was eight feet from the snow bank), but, when he first saw appellant's car on the wrong side of the highway several hundred feet away, he was justified in assuming that it would seasonably return to its own proper side. *Luther v. Pacific Fruit & Produce Co.*, 143 Wash. 308, 255 Pac. 365; *Johnson v. Burnham*, 198 Wash. 500, 88 P. (2d) 833. It did, in fact, according to his testimony, do just that. The second and last time it "shot" across the road, he clearly had no time or opportunity to avoid it.

We have pointed out that the testimony was in conflict as to whether the appellant's automobile struck respondent's car at an angle from the front, or from the rear. However, it is not necessary for us to pass upon that question. Photographs of respondents' car, taken by a member of the state patrol within an hour or so after the accident, which were admitted in evidence as exhibits, plainly indicate that the two vehicles did not meet in even a partial head-on collision. In these photographs, the front portion of respondents' car shows no indication of a direct impact. Appellant's car evidently came against it from its left side, at what particular angle is not material because, in any event, it does not appear that respondent driver could have avoided the collision by turning his car a few feet farther to his right.

We agree with the conclusion of the trial court that appellant failed to sustain the burden of proving his affirmative defense of contributory negligence.

Judgment affirmed.

MAIN, BLAKE, STEINERT, and SIMPSON, JJ., concur.