[No. 23430. Department Two. December 23, 1931.]

ROBERT G. WISEMAN, *Respondent*, v. SKAGIT COUNTY DAIRYMEN'S ASSOCIATION *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 369.

58

*Bogle, Bogle & Gates, Sidney A. Moss, Thomas Smith,* and *James G. Smith,* for appellants.

*C. J. Henderson* and *Alfred McBee,* for respondent.

HOLCOMB, J.—This action for damages for personal injuries, resulting from a collision between an automobile and a truck, resulted in a verdict by a jury in favor of respondent for $10,335.85, for which, after denying a new trial, the trial court entered judgment.

The negligence alleged by respondent to have been committed by appellant Shular, the agent, servant and employee of appellant Dairymen's Association, consisted of driving the truck of appellant at a high, dangerous and unlawful rate of speed and over forty miles per hour; that the truck was driven and operated on the wrong side of the highway and upon that portion of the highway to which respondent was entitled; that the driver of the truck, at the time and place of the collision, was driving and operating it without looking where he was going; that the truck was being driven and operated by Shular in such a manner as to unnecessarily endanger the lives and property of other users of the highway, and particularly respondent;

that, when the automobile of respondent and the truck of appellant, driven by Shular, had reached the point where the truck and automobile should have passed, appellant Shular negligently, carelessly, unlawfully and in utter disregard of the rights of respondent, drove and operated it in such a manner that the left side of the truck was over and upon the wrong side of the highway and upon the side of the road to which respondent was entitled, in such a manner that the truck collided with the left side of respondent's automobile.

Appellants answered with denials, and with affirmative allegations of contributory negligence in that, among other things, respondent was intoxicated and drove his automobile at a high and dangerous rate of speed and partly upon the wrong side of the highway at the time and place in controversy; that whatever damage or injuries respondent received, were due to his own carelessness, negligence and want of care. The affirmative allegations of the answer were denied by reply.

The collision occurred between 3:30 and 4:30 o'clock in the afternoon on September 15, 1929. Respondent, a young man twenty-five years of age, accompanied by one Theodore Buchanan, a boy nineteen years old at the time of the trial, was driving a Ford roadster in a westerly direction on the public highway extending from Rockport to Concrete. Appellant Shular, an employee of appellant Dairymen's Association, was driving a milk truck belonging to the association in an easterly direction. While rounding a curve, described by witnesses as about a quarter of a square turn, there was a collision between the left side of the Ford roadster and the left side of the truck, resulting in the left arm of respondent being severed above the elbow. At the point of the collision, the highway was fourteen to

sixteen feet wide, the surface was composed of gravel and was rough and full of chuck holes.

Respondent testified that, as he approached the curve in the highway, he was driving about thirty or thirty-five miles per hour. He saw appellant's truck when it was approaching the curve from the opposite direction, at which time the two vehicles were about one hundred or one hundred fifty feet apart. Respondent took his foot off the accelerator, and at the time of the collision was probably going twenty-five or thirty miles per hour. When he first saw appellant's truck, Shular was driving in the center of the highway at a speed of forty miles per hour and not watching the road. Shular appeared not to see him until the vehicles were within thirty or forty feet of each other, at which time Shular turned to the right. This swung the rear end of the truck in front of respondent, who was unable to turn further to his right because of logs which lay on the shoulder close to the highway. The center of the body of the milk can rack, which extended from the driver's seat to the rear of the truck, struck the side of the Ford. The first brace on the body of the truck caught his left arm, which threw it into the next brace and severed the arm above the elbow. The testimony of respondent was corroborated by the Buchanan boy.

██ Buchanan admitted at the trial that he signed a written statement on September 18, 1929, prepared by an attorney of Seattle, which was signed by Buchanan in the presence of the attorney and appellant Shular. In that statement, among other things, he stated that, when the Ford hit the truck, he believed the truck was stopped, or just about stopped; and that, when the crash occurred, the truck was on the south side of the highway with its right wheels about one or one and a half feet off the road; that the road at that point is

about twenty feet wide, filled with chuck holes and very rocky; that, when the Ford struck the truck, it was well over on the left side of the road.

He also admitted that, on September 21, 1930, he signed another statement in the presence of other attorneys and appellant Shular, in which, among other things, he said that the truck at the time of the collision was on the extreme right side of the highway going in an easterly direction, was traveling at a very slow speed on the right side of the road and, in fact, almost stopped; that the Ford was not on its right side of the road, but was on the left of the center of the road when it hit the truck; that the driver of the truck, appellant Shular, was not at fault or to blame for the collision; that the Ford driver was to blame for the collision and was solely negligent.

Buchanan testified that those statements were untrue; that he did not read the statement signed by him on September 18, and that he was not telling the truth in the statement given to one of the attorneys on September 21. As to this, the credibility of Buchanan was for the jury to determine. His testimony in the record is very clear, positive and straightforward.

Inasmuch as the evidence on behalf of respondent was substantial and positive that the fault was that of appellant's driver, Shular, while Shular's evidence was directly to the contrary, the conflict in the evidence was for the jury to determine.

Therefore, we find no merit in the contention of appellants that the trial court should have granted a new trial because the verdict was contrary to the evidence.

It is next argued in the briefs by appellants, rather inconsecutively, that the trial court erred in giving instructions 17, 2, 3, 7, 10, 12 and 8, and in refusing to give appellants' requested instruction 8.

We shall first discuss the correctness of instruction 17, which reads:

"The court instructs you that, even though you should find from a fair preponderance of the evidence that the plaintiff was driving his automobile around a curve at the point of the collision at a speed in excess of that allowed by law, but that the plaintiff was upon his own proper side of the road and the defendant at said time and place was not upon his own proper side of the road, but was upon that portion of the highway to which the plaintiff was entitled, the excessive speed of the plaintiff would not be the proximate cause of the collision and your verdict in such case should be for the plaintiff, regardless of the speed at which he was driving."

The question of the speed of respondent's automobile at the time and place of the collision naturally had an important bearing in this case. There is substantial evidence that the speed of respondent was excessive, although only one witness, who was both an eye witness and an expert automobile mechanic of eighteen years experience, gave any estimate of its rate of speed. He testified that he heard it from a distance of about one hundred sixty feet from where the collision occurred, and although this witness had his back to the approaching car he stated that he could judge its speed better by its noise and it was going at least forty-five miles per hour. He said he could tell by the roar of the motor, and that the roar of the motor of respondent's Ford car would not be such as it was at that time until the motor had reached a speed of forty miles an hour. He gave his reasons for that estimate. He also owned and drove a car of the same model.

Although other witnesses merely said that the car of respondent was going fast and made no estimate of the rate of speed, the evidence of this witness was sufficient to constitute more than a mere scintilla of

evidence, as argued by respondent, as to the excessive speed of the car of respondent at the time and place of, or an instant before, the collision.

Appellants invoke the provisions of Rem. 1927 Sup., § 6362-3, reading:

"(a) Every person operating or driving a vehicle of any character upon a public highway of this state shall drive the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of the traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface and freedom of obstruction to view ahead, and so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of the street or highway and in no event at a speed greater than forty miles an hour."

In instruction seventeen, the jury were told that excessive speed would not be the proximate cause of the collision provided the person guilty of such violation of law was on his own proper side of the road at the time of the accident. Such an instruction withdrew from the consideration of the jury any question of the excessive speed of respondent if he was on his own side of the road. He could proceed at any speed he desired under that condition, and under no circumstances could the speed be the proximate cause of the accident.

In *Van Cello v. Clark*, 157 Wash. 321, 289 Pac. 19, the plaintiff was proceeding down hill and around a curve. It was disputed whether or not he was on his own proper side of the highway. The defendant was driving up the hill at a speed of from twenty to twenty-five miles an hour, but his view was obstructed so he could not have a clear vision ahead for three hundred

feet, as required by statute. The trial court there gave an instruction reading:

"You are instructed that the rate of speed of defendant's automobile is not to be considered by you even though you believe from the evidence that such speed was unlawful and negligent, unless you further find that such speed was the proximate cause of the accident. If you find that the accident would have occurred, even though the defendant had been driving at a careful and lawful rate of speed, then I instruct you that the speed of defendant's car was not the proximate cause of the accident and you cannot find against the defendant on that ground."

We said:

"This instruction, as drawn, was properly refused. The jury were entitled to consider the rate of speed at which appellant's car was being driven, even though they might be of the opinion that such speed, while unlawful and negligent, was not *the* proximate cause of the accident. . . . The jury might well have been instructed that, if they should find that the accident would have occurred even though appellant had been driving his car at a lawful rate of speed and at a rate which the jury should find, in view of all the circumstances of the case, was not negligent, then, in that event, the speed at which they should find, as matter of fact, appellant's car was being driven, even if excessive, was not a proximate cause of the accident and the jury should not find against appellant upon the sole ground that he was driving at a rate of speed in excess of that fixed by law. . . .

"The requested instruction went farther than this, and error cannot therefore be predicated upon the failure of the trial court to give the same."

It is obvious that the instruction in this case is inconsistent with the rule above announced. In *Von Saxe v. Barnett,* 125 Wash. 639, 217 Pac. 62, quoted and relied upon by respondent, the question of whether or not the accident would have happened if the defendant in that case had been proceeding at a lawful and

careful rate of speed or at an excessive speed was left to the jury. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684, also cited by respondent as fully applicable to the question in this case, we do not so consider. There, the court found that there was not a word of testimony showing or tending to show that the speed of the car had anything to do with the collision, and that therefore the trial court correctly took that question from the jury. In the instant case there is substantial evidence of the excessive speed on the part of respondent's car. See, also, *Martin v. Seymour,* 123 Wash. 478, 212 Pac. 556; *Mattson v. Cragin,* 149 Wash. 638, 272 Pac. 36; and *Woods v. Greenblatt,* 163 Wash. 433, 1 P. (2d) 880.

We conclude that the giving of instruction seventeen was prejudicial error.

In instructions 2, 3, 7 and 10, assailed by appellants, the jury were told, in substance, that they should find for respondent if certain acts of alleged negligence on the part of appellant Shular were the "proximate cause" or "proximately contributed to" respondent's injuries and damages. The language of them reads, in substance, that "if the negligence of the defendant caused or proximately contributed to the plaintiff's damages and injuries the jury should find for the plaintiff."

Respondent contends that the terms "proximate cause" and "proximately contributed to" mean the same in law; that, if an act proximately causes an injury, it contributes thereto as a proximate cause or proximately contributes to the injury. He quotes *Akin v. Bradley Engineering & Machinery Co.,* 48 Wash. 97, 92 Pac. 903, 14 L. R. A. (N. S.) 586, as follows:

"It is fundamental, of course, that one cannot recover for injuries against another whose act or omis-

sion was not, or did not contribute to, the proximate cause of such injury. But it is equally true that, where a negligent act or omission sets in operation a train of occurrences resulting naturally in the injury complained of, such negligent act or omission is deemed to have been the proximate cause, or to have contributed thereto.''

The language quoted in that case was used in determining whether the negligence of a *third party* in leaving dry batteries where they could be found by children would be a *concurrent* rather than an intervening cause. The following cases, also cited and relied upon by respondent, are, in principle, similar cases: *Piqua v. Morris,* 98 Ohio 42, 120 N. E. 300, 7 A. L. R. 129; *Dougherty v. Ellingson,* 97 Cal. App. 87, 275 Pac. 456; *Dowd v. Atlas Taxicab & Auto Service Co.,* 69 Cal. App. 9, 230 Pac. 958; *Athens Mining Co. v. Carnduff,* 123 Ill. App. 178.

Thus, the *Piqua* case, *supra,* quoting approvingly the text from Shearman & Redfield on Negligence, 6th ed., § 39, was decided upon the basis that there may be two or more concurring and contributing causes of the injury or damage other than the negligence of the defendant. Our own cases of *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582; and *Anderson v. McLaren,* 114 Wash. 33, 194 Pac. 828, and others, follow such principle as to concurrent acts of negligence where there are two or more alleged factors contributing thereto. In the instant case, there are only two actors; respondent and the driver of appellant's truck. No other factor could have concurred in, or contributed to, the alleged negligence of appellant's driver except respondent himself.

While we might not reverse the judgment in this case solely upon the inaccurate use of the words ''proximately contributed to'' in instructions 2, 3, 7 and 10, since there were general instructions defining

what the proximate cause necessary to constitute contributory negligence is, were we convinced that the jury were not misled, we think that, upon a retrial, these instructions should be reframed so as to avoid confusion between instructions.

On the record before us, we find no error in the refusal to give requested instruction 8, nor in giving instructions 8 and 12. To set them out would unnecessarily prolong this opinion.

For the reasons given, we conclude that a new trial must be granted, and it is so ordered.

TOLMAN, C. J., BEALS, MAIN, and MILLARD, JJ., concur.