[No. 25146. Department Two. August 1, 1934.]

PAUL B. CLARK, *Appellant*, v. GLEN C. KING *et al.*, *Respondents*.[1]

[1] Reported in 34 P. (2d) 1105.

*Harroun, Maloy & Shidler* and *Clarence S. Lind,* for appellant.

*Roberts & Skeel* and *W. R. McKelvy,* for respondents.

HOLCOMB, J.—Appellant instituted this action against respondents to recover damages for personal injuries sustained in an automobile collision. Appellant was riding with respondent, the husband, who will henceforth be mentioned as if the only respondent, since he was operating the car. Appellant requested that he be allowed to ride with respondent to a point near Enumclaw where he was working, or expecting to work, on a certain contracting job, and alleged and testified that he offered to pay the cost of the gasoline used.

The collision occurred on what is known as Empire way when the car had almost reached the city limits of Seattle, going south. The accident occurred between three and four o'clock in the afternoon on Sunday, December 4, 1932. The weather was fair, and visibility good. At the point where the collision occurred, the highway is straight, with a perfectly level and smooth graveled space on each side of the pavement, twenty-eight feet wide.

As respondent was proceeding south, he saw that he was about to meet an automobile going toward Seattle in a northerly direction, when suddenly a third automobile, also proceeding northerly, turned to its left in the lane of respondent's travel, traveling at a high rate of speed, estimated by one witness, who had a view of the car from the side in a nearby house, and another witness, who was riding in that car, at better

than fifty miles an hour, driving directly toward the car of respondent at that rate of speed on respondent's side of the highway. When respondent first saw this car approaching, he slackened his speed and got over to the right, to within about two feet of the edge, and continued over to his right until he reached a point some ten to fifteen feet to his extreme right edge of the pavement; in other words, he drove off of the pavement to his right some ten or fifteen feet, in order to avoid a collision with this third car, which was afterwards known to be a car driven by one DeCampo, which also drove off of the pavement to its left side and collided with the automobile of respondent. The highway at the point where the accident occurred is seventy-six feet in width. The map and photographs in the record show that it is straight for some distance and entirely level, the graveled portion on each side being even with the pavement.

The trial court submitted the case to the jury, and the jury awarded a verdict in favor of appellant, after which the court sustained a motion for a judgment notwithstanding the verdict of the jury, from which judgment this appeal results.

Appellant himself testified that, when he first saw the other two cars racing up the highway toward the car in which he was riding, respondent made a move to the right; it seemed to him that respondent observed the car and moved over to about two feet from the edge of the pavement and went on south; the DeCampo car was ahead of theirs; it seemed once that the DeCampo car was going one way, but his arc was off more in their direction, and respondent hit his car at about the front seat. He also testified that, when the DeCampo car first started to pass the other car, five or six hundred feet away, it looked as though it would be possible for him to get back on his side of the highway before

being met by respondent's car; but that the car he was intending to pass came right along, and he came right straight ahead on respondent's side of the pavement.

Another witness called by appellant, a young woman living at a place on Empire way very near where the accident took place and who was looking out of a window in her home when it occurred, first saw the two cars racing side by side, northerly, nearly parallel. They retained those positions for some little distance. It seemed that the one car couldn't pass the other car, both of which she said were going better than fifty miles an hour, and turned out in the direction in which a car from the north was coming, which was respondent's car. Afterwards, DeCampo admitted to her, in talking about the accident, that he was traveling about fifty miles an hour.

A young woman called by the defense, who was in the DeCampo car, the only one traveling with him in his car, and who was, apparently, a disinterested witness, testified that DeCampo was trying to pass the other car going north and was having trouble doing so, although traveling at about fifty miles an hour, and turned directly into the path of respondent. The car of respondent left the pavement first to its right. She was also very seriously injured in the collision.

The trial judge concluded, after hearing the evidence and the argument on the motion for judgment notwithstanding the verdict, that, even though respondent was driving at a rate of speed which was beyond the limit fixed by ordinance and which would be negligence of itself as a matter of law, such negligence was not the proximate cause of the collision and the damage sustained by appellant.

Appellant strenuously contends that the trial court invaded the province of the jury in deciding that respondent had acted as a careful and prudent driver,

and the question as to whether he acted as a reasonably prudent man, under the circumstances, was a question of fact for the jury.

An emergency unquestionably existed at the time of the accident, but the emergency was created by the driver of the DeCampo car in going over on the wrong side of the pavement and persisting in staying there and finally driving respondent off of the highway from a place where he had the right to travel. That emergency was not created by the negligence of respondent. The combined speed of both cars was better than a hundred miles per hour. Had respondent slowed his speed, or instantly stopped his car, he would have taken just as great a chance.

Appellant endeavors to bring this case within the rules announced in cases of which *Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676, is typical. That case was one where the alleged emergency was brought about by defective brakes on the car of the one seeking to bar recovery. We there said:

"One who operates on the streets of a city such a dangerous instrumentality as an automobile is bound to take notice that he may be called upon to make emergency stops, and it is negligence on his part not to keep the automobile in such condition that such stops are possible."

That principle has been followed in a number of subsequent cases, particularly in *Ritter v. Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270.

Another case strongly relied upon by appellant, *Wiseman v. Skagit County Dairymen's Association,* 166 Wash. 57, 6 P. (2d) 369, is inapt. There was a conflict in the evidence in that case as to which was on his own right side of the roadway in passing around a sharp curve on which the collision occurred. The law relating to the operation of cars at such curves was

the question there involved, and conflicting issues of fact, as to which reasonable minds might differ.

This case is governed by the principle announced in *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684, where we held that, even if it were conceded in that case that, at the time of the collision, the automobile was traveling in excess of the speed limit allowed by state laws and city ordinance, there was no testimony tending to show that the speed of the car had anything to do with the collision. The collision would have occurred whether the automobile was traveling at the rate of ten miles or thirty miles per hour. There was no danger at all because of the speed of the car until the boy suddenly turned in front of it at such close proximity as to make a collision inevitable. This rule has been followed in *Luther v. Pacific Fruit & Produce Co.,* 143 Wash. 308, 255 Pac. 365; *Hirst v. Standard Oil Co.,* 145 Wash. 597, 261 Pac. 405; *Church v. Shaffer,* 162 Wash. 126, 297 Pac. 1097; *Piland v. Yakima Motor Coach Co.,* 162 Wash. 456, 298 Pac. 419; *Thomson v. Schirber,* 164 Wash. 177, 2 P. (2d) 664.

To the same effect is *O'Mally v. Eagan,* 43 Wyo. 233, 2 P. (2d) 1063, 77 A. L. R. 582, which contains an exhaustive review of the cases from many jurisdictions, citing with approval our own case of *Burlie v. Stephens, supra.*

See, also, *Smith v. Mead Construction Co.,* 129 Kans. 229, 282 Pac. 708; *Silveira v. Siegfried,* 135 Cal. App. 218, 26 P. (2d) 666. Cf. *Harry v. Beatty,* 177 Wash. 153, 31 P. (2d) 97; see notes to *Allen v. Schultz, supra,* 6 A. L. R. 680.

Under the evidence, giving it its full value in favor of appellant, reasonable minds could not, or should not, differ that respondent pursued as safe a course as could have been adopted by him, in view of the emergency confronting him, and the driver of the DeCampo

car was the one at fault. He seemed determined to pass the other car at all hazards, and compel approaching cars to avoid collision in any way they could.

The judgment must be, and is, affirmed.

BEALS, C. J., BLAKE, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—Assuming that an emergency existed not created by any act of the respondent King, yet King, driving at the rate of fifty miles per hour, saw ahead of him, and approaching at a like or greater speed and but six hundred feet distant, a car occupying his side of the roadway. At the speed each was traveling, they were bound to collide within a period of about four and one-sixth seconds and yet, as the jury might have found, King wholly failed to reduce his speed.

To say, as a matter of law, that King acted as a careful and prudent driver would have acted under like circumstances, or that his failure to reduce speed was not a proximate cause of what followed, is to invade the province of the jury.

One driving fifty miles per hour with sudden death in plain sight and only four seconds away might very well be held to be negligent as a matter of law if he failed to reduce speed, but how the law can say that the conditions here existing did not suggest the advisability of reducing his speed and that his speed was not a factor, is beyond my comprehension.

I therefore dissent.