[No. 28083. *En Banc.* September 25, 1941.]

O. S. JOHNSON, *Appellant,* v. DAN OHMAN *et al., Respondents.*[1]

[1]Reported in 117 P. (2d) 217.

*Ralph E. Purves,* for appellant.
*Marion Garland,* for respondent.

DRIVER, J.—This action was brought by the plaintiff to recover for damage to his automobile resulting from a collision with an automobile of the defendants, who cross-complained for damage to their own car. The court, after a trial without a jury, found that the collision had been proximately caused by the negligence of both parties and entered judgment denying recovery to either of them. The plaintiff appealed.

The wife was driving respondents' automobile. As her husband was not with her and there will be no occasion to mention him, for convenience, we shall hereinafter refer to Mrs. Ohman as if she were the only respondent.

The accident occurred October 23, 1938, at eight-thirty o'clock in the morning, on a county road surfaced with "black top" pavement, the paved portion being approximately sixteen feet wide. There were dirt shoulders on the sides of the pavement, but the record does not show their width. Appellant's car, driven by his son, was proceeding in a northerly direction around a curve to the right when it met respondent's automobile traveling in the opposite direction, and the two vehicles collided. The points of contact were the left-rear portion of appellant's car and the left-front wheel and the side of the left-front fender of respondent's car. The front of the respondent's car was not damaged. The trial court, in its memorandum opinion, sagely observed:

"The evidence in this case is conflicting, of course, as it is in all automobile damage cases. One side says one thing and the other side says the other. It is not necessarily intentional, but that is just human nature."

The conflicting testimony as to the speed of appellant's automobile and the manner in which the collision occurred, will be discussed in connection with the questions raised by the assignments of error. There are but two assignments: (1) That the lower court erred in finding that appellant's car was traveling at an excessive speed; and (2) that the court erred in concluding that such excessive speed constituted contributory negligence. They will be discussed in the order stated.

*First.* The appellant's driver and his companion each testified that they had been going thirty-five miles an hour, but had slowed down to about twenty-five miles just before the collision. On the other hand, the respondent testified that appellant's driver approached her at forty-five miles an hour, and that he came along "just like a shot." Respondent and three of her witnesses also testified that the impact overturned appellant's automobile, and its momentum carried it north along the highway, on a slightly rising grade, for a hundred feet or more before it came to rest upon its side. By the following comment in its memorandum opinion, the trial court indicated that it was profoundly impressed by this circumstance:

"Then you can't escape the fact that their [appellant's] car went at least a hundred feet after the accident, after the collision, and did not roll on its wheels, —you lose control and a car will roll indefinitely, and while the grade is slight, the evidence definitely establishes that there is a slight upgrade, and that car turned over on its side, wasn't rolling on its wheels and was going against the natural obstruction of the highway and the wind and everything and went over a hundred feet, which is definitely conclusive in my mind that

that car must have been going too fast around that curve."

It is well settled that, in a case of this kind, the impact and violence of a collision may be taken into consideration in determining the rate of speed. *Osborn v. Seattle*, 142 Wash. 25, 31, 252 Pac. 164; *Day v. Polley*, 147 Wash. 419, 423, 266 Pac. 169; *Harry v. Pratt*, 155 Wash. 552, 556, 285 Pac. 440; *Hunter v. Lincoln Stages*, 161 Wash. 634, 297 Pac. 179; *Copeland v. North Coast Transportation Co.*, 169 Wash. 84, 89, 13 P. (2d) 65; *Gaskill v. Amadon*, 179 Wash. 375, 380, 38 P. (2d) 229.

Appellant argues that the speed limit was fifty miles an hour; that there was no competent evidence that appellant's car was exceeding the limit except the testimony of one of respondent's witnesses (a Mr. Erickson) that, when it passed him two miles north of the scene of the accident, it was going sixty miles an hour; and that such testimony was too remote to be worthy of consideration.

Fifty miles an hour is the maximum lawful speed limit, and is permissible only under the most favorable circumstances. The statute which fixes the limit (Rem. Rev. Stat., Vol. 7A, § 6360-64 [P. C. § 2696-891]) qualifies it by providing that a vehicle must be operated "in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, . . . " In the instant case, the collision took place on a pronounced curve on a winding, rather narrow road. Respondent testified that the curve could not be negotiated safely at a speed greater than thirty miles an hour. Appellant's driver testified that, as he approached it, he reduced his speed from thirty-five miles to twenty-five miles an hour, because "I knew there was a bad road in there and I slowed down." Clearly, a speed of fifty miles an hour would not be

reasonable or proper under such conditions. As to the testimony of Mr. Erickson (it came in without objection at the trial), the following comment in the memorandum opinion indicates that the court did not give it much probative value:

"They passed Mr. Erickson back some two miles, *which isn't any definite proof at all that they were continuing that speed,* but they passed him at a high rate of speed; sixty miles an hour or thereabouts, on that road, is too fast." ( Italics ours.)

Disregarding entirely the testimony of the witness Erickson, we think the record amply justifies the trial court's finding that the operator of appellant's automobile "was driving same at a high and dangerous rate of speed . . . "

*Second.* With reference to his second assignment of error, appellant maintains that, in any event, speed should not be held a bar to his recovery, because it had no proximate, causal connection with the collision. He relies upon *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Piland v. Yakima Motor Coach Co.,* 162 Wash. 456, 298 Pac. 419; *Thomson v. Schirber,* 164 Wash. 177, 2 P. (2d) 664; *Clark v. King,* 178 Wash. 421, 34 P. (2d) 1105; and *Hutteball v. Montgomery,* 187 Wash. 516, 60 P. (2d) 679.

A similar contention was advanced in *Stangle v. Smith, ante* p. 461, 117 P. (2d) 207, a recent decision of this court. We held that, under the circumstances of that case, the driver of a car, which was on the proper side of the highway, could have avoided a collision had he been proceeding more slowly, and his excessive speed was, therefore, a proximately contributing factor. In the opinion, we said:

"In the former case [*Burlie v. Stephens, supra*], a boy on roller skates and, in the latter [*Clark v. King, supra*], an automobile turned into the path of an oncoming car so suddenly, in such close proximity, and

under such circumstances that the driver, who had no reason to anticipate the danger, could not escape a collision. In each instance, we held that the speed of the car on the proper side of the street should not be considered, because speed had nothing to do with the accident. The crux of those decisions, and others of like tenor by this court, is expressed in the following quotation from the opinion in *Burlie v. Stephens:*

" 'The record shows that the collision would have occurred whether the automobile was traveling at the rate of ten miles or of thirty miles an hour. There was no danger at all, regardless of the speed of the car, until the boy suddenly turned in front of it at such close proximity to it as that the collision was inevitable.

" 'The violation of a speed ordinance or statute is not in itself sufficient to make the driver of the automobile liable in damages in the event of a collision. There must be something more; it must appear that such violation was the proximate cause of the injury.' "

What we said in *Stangle v. Smith* applies to all the cases which appellant herein has cited. In each of them, a driver, who was on his own side of a street or highway, had been placed in such a situation that he could not have avoided a collision regardless of what his speed might have been. In *Thomas v. Schirber, supra,* we said:

"Had the automobile of the respondent been standing still at the point where the collision occurred, where the respondent had a right to be, the accident would have happened just as it did happen."

Appellant's contention that the speed of his car did not proximately contribute to the accident is necessarily based upon the testimony of his son and the son's companion that, although they had turned out as far on the dirt shoulder to their right as they could go, yet the respondent's car came so far over on their side of the road that it was not possible for them to avoid

the accident. This testimony, however, was sharply disputed.

Respondent, without question, was traveling at a moderate rate of speed, that is, about twenty-five miles an hour. Her car stopped, in an upright position, within twenty to twenty-five feet of the point of impact. She testified that, just before the collision, she was on her own right-hand side of the road (there was no longitudinal center stripe or other center marker). She also stated that the appellant's car did not turn out onto the shoulder until after the impact.

Six days after the accident, respondent signed a statement written out in longhand by a representative of an insurance company. An exhibit in the case, it recites in part:

"I saw no cars approaching and figured that I could cut the corner on the curve. When I got down the hill into the curve I was [on the left side of the] *slightly over the center line* of the —D. O.—road when suddenly another car loomed up in front of me. I swung to the right and put on my brakes. The other car swung over but [I hit the other car] *we came together* —D. O. The other car was partly over in the dirt on the edge of the road."

Before respondent signed the statement, the words which we have enclosed in brackets were, at her request, struck out by the drawing of a line through them, and the italicized words were substituted therefor.

The force of the impact "blew out" respondent's left-front tire, and the rim scored the surface of the highway, leaving a visible mark. The same Mr. Erickson hereinabove mentioned, who was, so far as the record shows, a wholly disinterested witness, testified that, when he visited the scene of the accident within a few minutes after it happened, he saw this rim mark, and that it "was just about in the center of

the road." Once more, we quote from the memorandum opinion because it so clearly shows how the trial court resolved the conflict in the testimony as to the positions of the cars upon the highway:

"The front end of the [appellant's] car got by the front of the Ohman [respondent's] car. The front of her car, according to the testimony of both the repair men was not touched,—that is, the fenders were not touched; the front of the rim. So that the two cars evidently escaped fronts, and had he [appellant's driver] been going at a proper speed, having gotten by the front he could have gotten by the rear.

"I cannot help but conclude that the negligence of both of these people—he was entitled to his full side of the road, but he is·not entitled to use it at an excessive rate of speed that will result in accidents under occasions of this kind. I think I have got to find that both parties to this case were negligent, and the plaintiff was negligent in driving entirely too fast on that curve. I think Mrs. Ohman was negligent in being slightly—to some extent; I don't know, but I still think there was still room to have passed, had he been going at the proper speed. The proximate cause of the accident was the contributory negligence of both parties, . . . "

In its formal findings of fact, the court found that the respondent was driving her car "at a lawful rate of speed and in a careful manner, except she was operating said car too near the center of said highway; . . . "

██ In numerous recent cases, we have said that, when the testimony is in conflict, the findings of fact of the trial court will not be disturbed unless the evidence preponderates against them. We need not marshal all the decisions here. The following may be regarded as "token" citations: *Bohlke v. Wright*, 200 Wash. 374, 93 P. (2d) 321; *Gensman v. West Coast Power Co.*, 3 Wn. (2d) 404, 101 P. (2d) 316; *Tutewiler v. Shannon*, 8 Wn. (2d) 23, 111 P. (2d) 215.

In the case at bar, we are unable to say that the evidence preponderates against the lower court's findings on the issue now under consideration. Taking the facts as established by such findings, although the respondent drove slightly to her left of the center of the highway, yet there was sufficient room for the driver of appellant's car to pass safely to her right had he been proceeding at a reasonable and lawful rate of speed. His excessive speed, therefore, was a proximately contributing cause of the collision, and the rule for which appellant contends does not apply.

Judgment affirmed.

ALL CONCUR.

