[No. 36963.   Department One.   September 24, 1964.]

ZENITH TRANSPORT, LTD. *et al., Respondents,* v. THE
BELLINGHAM NATIONAL BANK, *as Executor,*
*Appellant.**

*Reported in 395 P. (2d) 498.

*Roehl & Dalquest* and *Russell Millhouse,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *William H. Gates, Jr.,* for respondents.

HILL, J.—This is an action for damages by Zenith Transport, Inc., arising out of two collisions involving three cars. Zenith secured a judgment for $17,576.42 against Richard Gorino and also against the Bellingham National Bank as the executor of the estates of W. A. Kemp and Gwendolyn, his wife. The executor is the appellant here.

The collisions occurred at about 1:45 a.m.; there were no stars and no moon; it was very dark. Gorino, in his Chrysler, passed Zenith's commercial truck and trailer, which was northbound on a road on which there are frequent curves. The collisions, however, occurred on a straight stretch of road which was variously estimated at from about a half-mile to about a mile in length. As Gorino entered this straight stretch, the wheels of his Chrysler went over the center line and remained there. At about

this time, the Thunderbird, driven by Mr. Kemp southbound, came in view at the other end of the straight stretch. Zenith's driver, William Linge, the only eyewitness who testified, estimated that the Gorino and Kemp cars were then half a mile apart. The Kemp car remained on its side of the road at all times prior to the collision, but close to the center line. Linge estimated its speed at "well over sixty" (60 being the legal limit at that time and place), and it did not slow down until the collision occurred. With the left wheels of Gorino's car over the center line, the Gorino and Kemp cars were on a collision course for some 15 to 20 seconds (Linge's estimate).

After the cars collided, the Kemp car seemed to bounce to its right and then proceeded diagonally across the road into Zenith's truck with such force that, after hitting and going under the truck, there was still enough momentum to hit the truck's left-front wheel, distorting its shape, and to proceed off the road and down into a ditch. Both Mr. and Mrs. Kemp were found dead in their car. There was no evidence as to whether they were killed in the first or second collision.

As stated, the Kemp car was at all times, before hit by the Gorino car, on its own side of the road; and it hit the Zenith truck only because of its collision with the Gorino car.

The negligence of the Kemps, relied upon to uphold the verdict and judgment, encompasses: Exceeding the speed limit, driving too close to the center line under the circumstances, and the driving by Mr. Kemp while under the influence of intoxicants.

The evidence that he was under the influence of intoxicants comes from the following circumstances: The county coroner, who arrived at the scene of the collision at about 2:30 a.m., smelled alcohol when he examined the bodies in the Kemp car. After removal of the bodies to a mortuary and at about 3:30 a.m., he took a blood sample from Mr. Kemp's body. It was carried to a Bellingham laboratory by the highway patrol. The technician who received the sample and conducted an analysis testified that it showed

0.14 per cent by weight of alcohol. A doctor testified that at 0.10 per cent almost everyone is under the influence of alcohol, and that at 0.15 per cent it is generally accepted that any individual is under the influence. He described the effects of alcohol on reaction time, the effect on an individual's nervous system, and one's ability to perform skilled acts.

This testimony is attacked at every stage—from the right to take the sample to the relevancy of the doctor's testimony.

The trial judge, intrigued by the questions here presented, as to the right to take a blood sample from a dead person and as to the use that could be made of the results of such a test, wrote a memorandum opinion in which he made a most thorough and scholarly examination of the cases in that area; and we find ourselves in complete accord with his conclusions, i.e.,

A. That this is not an autopsy or post-mortem situation, but is governed by RCW 68.08.106 which relates to blood and other body specimens taken by the coroner for analysis and states that the coroner may, either in his discretion or upon lawful request, retain such specimens as may be "needed or desired for evidence to be presented in court." This section does not limit such use to criminal cases.

B. There is no validity to the objection that the blood analysis was not admissible in evidence, because the driver was dead when the blood was withdrawn and could not consent thereto.[1] It is well established that one's right to due process under the Fourteenth Amendment is not transgressed by taking and using in evidence blood alcohol removed from a person while unconscious. *Breithaupt v. Abram* (1957), 352 U. S. 432, 1 L. Ed. (2d) 448, 77 S. Ct. 408; *Block v. People* (1951), 125 Colo. 36, 240 P. (2d) 512,

---

[1]The defendant-executor was relying on that part of RCW 46.56.010 which states:

" . . . Nothing herein contained shall be construed as requiring any person to submit to a chemical analysis of his blood, and the refusal to submit to such an analysis shall not be admissible in evidence in any criminal prosecution for a violation of the provisions of this section or in any civil action. . . ."

*cert. den.* (1952), 343 U. S. 978, 96 L. Ed. 1370, 72 S. Ct. 1076, *reh. den.* (1952), 344 U. S. 848, 97 L. Ed. 659, 73 S. Ct. 6; *Hanlon v. Woodhouse* (1945), 113 Colo. 504, 160 P. (2d) 998; and *State v. Bock* (1958), 80 Idaho 296, 328 P. (2d) 1065.

*Lawrence v. Los Angeles* (1942), 53 Cal. App. (2d) 6, 127 P. (2d) 931, was a civil action. Blood was taken from a deceased driver, and the court followed the same rule of admissibility as applied in California in ordinary blood alcohol tests.

The driver's right to refuse to consent to a blood test is a personal right which terminates with his death. *Ravellette v. Smith* (C.A. 7th 1962) 300 F. (2d) 854 (applying Indiana law); and *Fretz v. Anderson* (1956), 5 Utah (2d) 290, 300 P. (2d) 642.

We conclude with the trial court that the coroner was within his rights in taking the sample of Mr. Kemp's blood; in having it tested; and in making the results available in this trial. No consent of the family or the executor of the estate was necessary.

The evidence establishes, contrary to the defendant-executor's contention, that the blood taken from Mr. Kemp was the blood which the technician examined and concerning which he testified. The testimony of the doctor was obviously necessary to explain to the jury the significance of the finding of 0.14 per cent by weight of alcohol in the blood sample.

■ The defendant-executor, as appellant, assigns error to the trial court's refusal to give three requested instructions: The one submitting the issue of unavoidable accident was properly refused. Had either Gorino or Kemp turned a little to the right, their collision could have been avoided. The negligence of Gorino is unquestioned. There was nothing from which the jury could conclude that the first collision occurred without negligence, a prerequisite to giving an instruction on unavoidable accident. Though the subsequent collision between the Kemp Thunderbird and the Zenith truck may have been unavoidable, it cannot be segregated from the original proximate cause.

For a collection of cases, most of which hold that it is error to instruct on unavoidable accident where a head-on collision occurs, see Annotation 65 A.L.R. (2d) 63.

■ The requested instruction, based on RCW 4.20.045 (now repealed), that the plaintiff, in a case against an estate,

" . . . 'shall not recover judgment except upon competent evidence other than the testimony of said injured person or persons and the testimony of the injured person or persons, by itself, shall not be sufficient to overcome the presumption of due care on the part of the deceased.' . . ."

was likewise properly refused. Although Zenith's driver, William Linge, was the only eyewitness who could testify (the Kemps were dead and Gorino could not remember any details) and was an employee of Zenith, that does not make his testimony that of an injured person or persons. He was asking for no damages. The fact that he was Zenith's employee might affect his credibility, but not his competence.

There was also other competent evidence on the issue of Mr. Kemp's negligence. This is well stated in the trial court's memorandum opinion:

"It appears to this court that by this proviso it is the duty of the court to take from the consideration of the jury and dismiss an action against the estate of a deceased defendant if there be no evidence of negligence other than that given by the plaintiff himself. Conversely, if there be competent evidence of negligence other than that given by the plaintiff himself, the court may not so dispose of the case but must then submit the determination of defendant's negligence to the jury upon the usual burden of proof rule. In this case there was substantial evidence of excessive speed given by persons other than the Plaintiff's driver, based upon the extent of damage done to the Plaintiff's truck, and to the Defendant's car, and from distance traveled by Defendant after the first head-on collision until the second collision. All evidence of Defendant's intoxication came from persons other than the Plaintiff's driver."

See also *Frothinger v. Serier* (1961), 57 Wn. (2d) 780, 360 P. (2d) 140.

The third requested instruction was the emergency instruction reading:

"An automobile driver who is suddenly placed in a position of peril without any negligence on his part and is compelled to act instantly to avoid injury is not guilty of negligence if he makes such a choice as a reasonably prudent and careful person placed in such a position might make, even though he did not make the wisest choice."

After having relied so extensively on the trial court's memorandum thus far in this opinion, we regret having to disagree with the trial court on this particular assignment of error. We have the two cars approaching each other on a relatively short straight stretch of road, on a dark night with no moon and no stars; the only basis for one determining the position of the other on the highway being their rapidly approaching lights (combined speed in excess of 100 miles an hour). Mr. Kemp may have been under the influence of intoxicants and he may have been exceeding the speed limit, but he was at all times on his own side of the road; and there would have been no collision but for Gorino driving over the center line on to Kemp's side of the road.

There is no contention that Kemp could have done anything after the first collision that could have then avoided the collision between his Thunderbird and the Zenith truck. Basically, the only thing that Kemp did that contributed to Zenith's damages was his failure to avoid a collision with the Gorino car.

Kemp, knowing that he was on his side of the center line and with no basis for judging the location on the highway of the Gorino car, except by its oncoming headlghts, had a right to assume that, if Gorino was not on his own side of the road, he would get back on it. This right continued until such time as it would have become apparent to a reasonably prudent and cautious man, under the conditions then existing of darkness and approaching lights, that the Gorino car was over the center line and was not going to get back on its own side. At whatever point a reasonably prudent and cautious person would have made that de-

cision, a jury might well find that he was in an emergency situation—without negligence on his part having created the situation which required instant action.

Whether the verdict would have been different, had the instruction been given, no one can say; but we are satisfied there was no adequate presentation of the executor's defense in this case without it.

We have recognized the "sudden emergency" rule many times. See *Kellerher v. Porter* (1948), 29 Wn. (2d) 650, 659, 189 P. (2d) 223, and cases cited; and we have not hesitated to reverse judgments for a failure to give an emergency instruction when the circumstances warranted it: *DeKoning v. Williams* (1955), 47 Wn. (2d) 139, 286 P. (2d) 694; nor have other courts: *Stickel v. Durfee* (1948), 88 Cal. App. (2d) 402, 199 P. (2d) 16; *Gilmartin v. D. & N. Transp. Co.* (1937), 123 Conn. 127, 193 Atl. 726; *Stevens v. Chandler Motor Co.* (1960), 222 Md. 399, 160 A. (2d) 772; *Filkins v. Snavely* (1949), 359 Mo. 356, 221 S. W. (2d) 736; *Hasselbrink v. Speelman* (C.A. 6th 1957), 246 F. (2d) 34; and *Williams v. Powers* (C.C.A. 6th 1943), 135 F. (2d) 153 (both federal cases applying Ohio law).

The emergency doctrine has been frequently applied on behalf of the driver of a car on its own side of the road, when confronted with a car on the wrong side of the road. *Lehmann v. Johnson* (1958), 218 Md. 343, 146 A. (2d) 886; *Sathrum v. Lee* (1930), 180 Minn. 163, 230 N. W. 580; *Mueller v. Haas* (1955), 71 Ohio L. Abs. 225, 131 N. E. (2d) 447. See also the following cases cited *supra*: *DeKoning v. Williams*; *Kellerher v. Porter*; *Stickel v. Durfee*; *Filkins v. Snavely*; *Hasselbrink v. Speelman*; *Williams v. Powers*; and *Gilmartin v. D. & N. Transp. Co.*

And where, as in this case, the driver when confronted by an emergency did nothing but continue on his course, the instruction is held to be properly given. *Wiley v. Young* (1918), 178 Cal. 681, 174 Pac. 316; *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150; *Gross v. Gross* (C.A. 7th 1948), 169 F. (2d) 199 (applying Wisconsin law). In the *Hoehne* case, *supra*, the court said:

"We think that the emergency rule when properly applied must likewise excuse inaction on the part of the innocent driver in his proper lane of traffic when suddenly confronted with an automobile on the wrong side of the road." (p. 173)

We find no error in this extensive record, except the failure to give the emergency instruction. For that error, the judgment is reversed and the cause remanded for a new trial.

OTT, C. J., ROSELLINI, HUNTER, and HALE, JJ., concur.