[No. 975-1.    Division One—Panel 2.    June 18, 1973.]

ROBERT E. BOERNER *et al., Appellants,* v. THE ESTATE OF AMOS GRANT LAMBERT *et al., Respondents.*

*Welts & Welts, David A. Welts, Lee, Smart, Cook, Dunlap & Biehl,* and *Nelson T. Lee,* for appellants.

*Boynton Kamb,* for respondents.

HOROWITZ, J.—Plaintiffs Boerner sued defendants for damages caused by the late Amos Grant Lambert resulting from a collision between their respective cars while the latter was driving on plaintiffs' side of a public highway. The jury held for the defendants, and plaintiffs Robert E. Boerner and Oneda Boerner, husband and wife, appeal.[1] The sole question is whether there was sufficient evidence to warrant an instruction on contributory negligence. We hold there was not and reverse for a new trial.

The facts will sufficiently appear in our discussion of the evidence. The collision occurred on State Highway 536, a 2-lane highway commonly known as the Anacortes Memorial Highway. It is the nearest traveled route between Mount Vernon and Anacortes, Washington. In the area concerned, the highway extends easterly from Swinomish Channel Bridge in a straight, level road, with 8.5-foot shoulders on each side of the highway adequate to permit a car to drive thereon in case of necessity.

On November 8, 1968, at approximately 4:45 p.m., plaintiff, age 51, accompanied by her minor son Gerald, was driving her 1966 Pontiac car at approximately 45 miles per hour in a westerly direction on State Highway 536 toward the Swinomish Channel Bridge. Plaintiff had traveled the road five or six previous occasions. Oncoming eastbound traffic in the lane to her left was heavy. The weather was overcast and raining, the road was wet and dusk was near. Some cars traveling easterly had their lights on; some did not. Plaintiff's car had its lights on. Plaintiff's view of oncoming easterly traffic was difficult because of weather and darkness. In order not to be blinded by lights from oncoming cars in the eastbound lane, she directed her primary vision toward the right side of her lane with her "secondary observation" directed forward.

---

[1] The claim of Robert E. Boerner as guardian ad litem for Gerald Boerner, a minor, is no longer involved. All reference to the plaintiff means only Oneda Boerner.

While so proceeding, she suddenly saw a white car (the Lambert vehicle), with headlights on, cross over from its eastbound lane of travel into hers, and then continue in an easterly direction toward her car. The white car was then up to 400 feet away from her car. The speed of the white car as it proceeded easterly in plaintiff's lane was about the same as plaintiff's. With both cars continuing at approximately the same rate of speed, plaintiff did not have more than 3 seconds to realize and adjust to the danger of imminent collision and take evasive action. Expert testimony showed the reaction time of motorists varies from $3/4$ to 2 seconds, with an average reaction time of $1\frac{1}{4}$ seconds. Deducting the minimum reaction time of $3/4$ seconds, plaintiff was left with $2\frac{1}{4}$ seconds to take evasive action. She characterized the situation as one of extreme emergency. Her first impression was that the driver of the white car was making an unsafe pass and could not get back into his own lane because of traffic in that lane. She first thought of avoiding the oncoming white car by heading into the ditch below the shoulder of the road to her immediate right. She rejected the idea because she feared that the ensuing wreck would cause injury to her son and herself. She then thought she would try to avoid the collision by getting over on to the shoulder to her right. She pulled to the right of her lane and slammed on her brakes. Her effort was unavailing. The ensuing collision rendered her unconscious and she remembers nothing more.

Gerald, her minor son, was occupying the right front seat of her car. He testified he heard his mother make an exclamation, looked up and saw the white car entering into their lane somewhat to the right of his mother's car but coming directly at them about 150 feet away. Gerald ducked under the dashboard. He remembers nothing more.

The collision in plaintiff's lane of travel occurred with great force. Plaintiff's vehicle was spun around backwards and came to rest partly on and partly off the westbound lane onto the 8.5-foot shoulder. Amos Grant Lambert was killed in the collision and plaintiff and her son seriously

injured. Subsequently, plaintiffs sued defendants for damages. The jury found for defendants. Plaintiffs appeal from the judgment entered on the verdict.

Plaintiffs contend that the court erred in instructing the jury that plaintiff could not recover if she was guilty of contributory negligence because there was no substantial evidence to support such an instruction. Defendants contend otherwise. In effect, they argue that had the plaintiff kept a proper lookout for cars proceeding easterly from the Swinomish Channel Bridge, she could have appreciated and seen the danger of the Lambert car crossing over into her lane of travel in time to have successfully taken evasive action.

The collision occurred approximately 1,300 feet easterly from the Swinomish Channel Bridge. When the Lambert vehicle was proceeding easterly crossing the bridge, it was traveling between 40 and 50 miles per hour. Lambert had an unobstructed view of the highway in front of him, including a view of plaintiff's car proceeding westerly with its lights on. Ahead of the Lambert vehicle, stopped on the shoulder of the eastbound lane, was a pickup truck driven by a Mr. Douglas Brown and a 1965 Pontiac car driven by a Mr. Glen Burfitt. The pickup truck driven by Brown was stopped in the middle of a private driveway about 900 feet east of the bridge and 400 feet west of the scene of the collision occurring shortly thereafter. The Burfitt car was stopped on the shoulder two or three car lengths ahead of the Brown vehicle. Both Brown and Burfitt started up their respective vehicles and proceeded to return to the paved portion of the highway. Before doing so they both turned to check the traffic in their lane, and both testified that the closest traffic they observed was still back on the bridge when they started their return to the highway. Burfitt accelerated his Pontiac car to a speed of 45 to 50 miles per hour. Brown followed and had reached a speed not exceeding 35 miles per hour when he heard the Lambert car honk at him from about two car lengths behind. Brown turned

his head and saw the Lambert vehicle trying to pass his pickup truck on his left side. The Lambert car struck Brown's pickup truck, first sending it sideways into the middle of the road and then sideways into the westbound lane. Meanwhile, the Lambert vehicle pulled into the westbound lane, plaintiff seeing it do so, and then collided with the plaintiff's car in the manner described.

If the Lambert vehicle was traveling between 40 and 50 miles per hour as it proceeded easterly from the Swinomish Channel Bridge, it was traveling between 58⅔ and 73⅓ feet per second. Lambert had several reasonable and lawful choices as he proceeded behind the pickup truck. He could stop his car within a distance of 122 to 192 feet if he was driving at 40 to 50 miles per hour; he could reduce his speed so that it would not exceed that of the pickup truck in front of him; or with or without reducing his speed, he could have turned his car to his immediate right and driven on the 8.5-foot shoulder. Even if plaintiff had directed her sole attention to the traffic in the eastbound lane, which in the exercise of reasonable care she was not required to do, she would have had a right to assume that Lambert would act reasonably and lawfully instead of suddenly, unreasonably and illegally, turning into her lane of travel in face of her oncoming car clearly visible to him. Assuming arguendo that she might have been alerted to Lambert's intention to pass the pickup truck to its left before Lambert turned into her lane, somewhere between the time he honked at the pickup truck (assuming she could hear the honk) and the time he crossed over into her lane, she still had a right to assume, before beginning to take evasive action, Lambert would not do so without preserving a fair margin of safety before executing his intention.

There is substantial case support for the following rules of law applied under a variety of factual patterns. A driver of a car lawfully proceeding in his lane has a right to assume that another driver proceeding in the adjoining

lane to his left in the opposite direction will not proceed in a negligent or unlawful manner until the first driver knows, or in the exercise of reasonable care should know, that the other driver will proceed negligently or unlawfully. *Zenith Transp., Ltd. v. Bellingham Nat'l Bank,* 64 Wn.2d 967, 395 P.2d 498 (1964); *American Prods. Co. v. Villwock,* 7 Wn.2d 246, 109 P.2d 570, 132 A.L.R. 1010 (1941); *Thomson v. Schirber,* 164 Wash. 177, 2 P.2d 664 (1931); *Luther v. Pacific Fruit & Produce Co.,* 143 Wash. 308, 255 P. 365 (1927). If, however, the first driver does not know, or in the exercise of reasonable care is not put on notice, that the other driver in the lefthand lane proceeding in the opposite direction will proceed negligently or unlawfully and thereby create a risk of collision with the first driver's car, the first driver cannot be held contributorially negligent in failing to timely see what a reasonable person would not have seen had he looked. *Bohnsack v. Kirkham,* 72 Wn.2d 183, 432 P.2d 554 (1967); *Underwood v. Tremaine,* 64 Wn.2d 12, 390 P.2d 533 (1964). If, however, the first driver suddenly and without prior warning sees the other driver cross over into the first driver's lane and thus create an emergency situation which requires the first driver to take immediate evasive action, then if the time for taking such evasive action is too short to prevent the collision, the first driver as a matter of law cannot be held guilty of contributory negligence. *Tutewiler v. Shannon,* 8 Wn.2d 23, 111 P.2d 215 (1941). Contributory negligence of the first driver in the illustration given cannot be determined by split-second computations of time and distance. *Kilde v. Sorwak,* 1 Wn. App. 742, 463 P.2d 265 (1970) (4 seconds); *Clark v. King,* 178 Wash. 421, 34 P.2d 1105 (1934) (4⅙ seconds); *Strickland Transp. Co. v. Gunter,* 175 F.2d 747 (8th Cir. 1949) (6 seconds); *Waguespack v. Savarese,* 13 So. 2d 726 (La. App. 1943) (4 or 5 seconds); *Henderson v. Henderson,* 239 N.C. 487, 80 S.E.2d 383 (1954) (3.4 or 4 seconds); *Hoehne v. Mittelstadt,* 252 Wis. 170, 31 N.W.2d 150 (1948) (2½ seconds).

■ The existence of contributory negligence must be determined on a case-by-case basis. However, the legal principles to be applied in such a determination discussed in *Kilde v. Sorwak, supra,* are helpful here. Plaintiffs there sued for injuries received at an intersection. Defendant, the disfavored driver, while traveling in the opposite direction on the same highway, turned left in front of plaintiff's car and collided with it. At the time of the accident, the weather was clear and sunny; the roads were straight and level; the pavement was dry; and plaintiff was driving about 25 miles per hour, which was the speed limit. When plaintiff was approximately 70 feet from the intersection, he first saw defendant's vehicle but did not see any left-turn signal. Plaintiff driver put on his brakes in an effort to stop before the cars collided. He was unsuccessful. Defendant contended plaintiffs could not recover because of contributory negligence. The court rejected this contention saying:

> Contributory negligence being an affirmative defense, the burden is upon the defendant to present substantial evidence of the fact that plaintiff had a reasonable time after discovery of defendant's negligence to react and avoid the accident. In *Clark v. King,* 178 Wash. 421, 34 P.2d 1105 (1934), our Supreme Court held that when an oncoming driver had a reaction time of 4⅙ seconds from the point of impact, such was insufficient and speed, as a matter of law, was not the proximate cause of the accident. *Cf. Emanuel v. Wise,* [11 Wn.2d 198, 118 P.2d 969 (1941)]. If plaintiffs' speed is increased as defendants would have it, the margin of safety is reduced, thereby decreasing even further any possibility of plaintiffs' speed being a proximate cause of the collision. To the extent that defendant's argument decreases the possibility of plaintiffs' alleged excessive speed being a proximate cause of the collision, it is self-defeating. Defendants failed to sustain their initial burden of proof.

1 Wn. App. at 748. The court also stated:

> A disfavored driver on the left (defendant) has the heavy burden (*Delsman v. Bertotti,* 200 Wash. 380, 93 P.2d 371 (1939)) and primary duty to avoid an accident

by looking out for and yielding the right-of-way to on-coming traffic and at all times must perform this duty with a reasonable regard to the maintenance of a fair margin of safety. *Emanuel v. Wise*, 11 Wn.2d 198, 202, 118 P.2d 969 (1941). The favored driver on the right (plaintiff) has a right to assume the disfavored driver will yield the right-of-way and is not required to antici-pate the disfavored driver's negligent conduct. When it becomes apparent the disfavored driver is not going to yield, he is allotted a reasonable reaction time in the exercise of due care to act before he can be charged with contributory negligence. *West Coast Transp. Co. v. Lan-din*, 187 Wash. 556, 60 P.2d 704 (1936); *Golub v. Manto-poli*, 65 Wn.2d 361, 397 P.2d 433 (1965) and cases cited therein.

. . .

Allowing defendants every favorable inference from the evidence, it becomes clear that defendant Sorwak was engaged in split-second timing. Using the farthest estimated distance (150 feet) and the slowest estimated speed (25 miles per hour), plaintiffs, when first observed by defendant, were 4 seconds from the point of impact. (Twenty-five miles per hour or $37\frac{1}{2}$ feet per second x 4 seconds equals 150 feet.) The reaction time allowed to plaintiff would be substantially under 4 seconds (about 2 seconds) because plaintiff was approximately 70 feet from the intersection when defendant began his left turn. Because both vehicles were moving toward each other, distance between them was rapidly decreasing. When plaintiff was 70 feet from the intersection, defendant was still either in the inside lane or the curb lane and had just started his turn. Until he began the left turn, plain-tiff had no reason to suspect defendant would not yield the right-of-way. As a reasonable man, plaintiff could not have anticipated or foreseen any potential risk or danger in continuing his line of travel. Defendant, without a reasonable regard for a fair margin of safety, continued his turn. Both vehicles would have passed without inci-dent if defendant had not taken the right-of-way in such close proximity to plaintiffs' car as to make a collision inevitable.

1 Wn. App. at 746-47.

In *Forgy v. Schwartz*, 262 N.C. 185, 136 S.E.2d 668

(1964), the court dealt with the duties of one confronted with an oncoming vehicle in the wrong lane:

Plaintiffs complain that she did not turn quickly enough but, considering the acute emergency which faced her, who can say that she failed to exercise ordinary care in the operation of her vehicle during the four to five seconds which determine the destiny of this case?

It may have been that Mrs. Schwartz could have driven farther to the right faster than she did; that at the same time she should have applied brakes with more force; or that she straightway should have "taken to the ditch." However, the faster a car is going the greater the risk that a sharp turn will upset it. We do not judge her conduct by hindsight, nor can we say that less disastrous consequences would have resulted had she driven off the pavement at fifty miles per hour. In any event, she was headed off the road when time and distance ran out on her.

If we were to concede both a delayed reaction and an error of judgment on the part of Mrs. Schwartz when she was suddenly brought face to face with unexpected danger, it is our opinion that her conduct in the acute emergency did not constitute actionable negligence. The evidence fails to show that an ordinary prudent person would have reacted more quickly or used better judgment under the same circumstances.

262 N.C. at 192. *See also Norwood v. Burford*, 83 So. 2d 570 (La. 1955).

■ No claim is made that an unsupported instruction on contributory negligence was not prejudicial to the plaintiff. *Petersavage v. Bock*, 72 Wn.2d 1, 431 P.2d 603 (1967); *Reynolds v. Phare*, 58 Wn.2d 904, 365 P.2d 328 (1961); *Schneider v. Midwest Coast Transp., Inc.*, 51 Wn.2d 673, 321 P.2d 260 (1958); *Kilde v. Sorwak, supra.*

The judgment is reversed for a new trial.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied August 15, 1973.